Henry ANDERSON et al., Plaintiffs,

v.

Walter REDMAN et al., Defendants.

Civ. A. No. 76-364.

United States District Court,
D. Delaware.

June 18, 1979.

Gary A. Myers, Dover, Del., and H. William Schab, Jr., Community Legal Aid Society, Inc., Georgetown, Del., for plaintiffs.

John A. Parkins, Jr., Asst. Atty. Gen., and John J. Polk, Asst. Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

At the time this complaint was filed on October 25, 1976,[1] plaintiffs in this class action were all incarcerated prisoners at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. Invoking the Eighth and Fourteenth Amendments, 42 U.S.C. § 1983 and several state laws governing corrections, their complaint sought permanent injunctive relief to alleviate the overcrowding of prisoners at DCC. This Court entered a final order in February of 1977 granting plaintiffs permanent injunctive relief. Although this Court expressly recognized the existence of a substantial federal constitutional question, it exercised pendent jurisdiction over plaintiffs' state-law claims and granted relief, with one exception,[2] solely on the basis of those state-law violations. Plaintiffs filed a Bill of Costs and Amended Bill of Costs seeking attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976 ("Fees Act") from the defendants in their official capacities for the fees and costs of successful prosecution of their claims by Gary A. Myers, a senior staff attorney of the Community Legal Aid Society, Inc. ("CLASI"), and his co-counsel, H. William Schab, Jr., also with CLASI. Because the defense to the petition for fees includes a challenge to the constitutionality of the Fees Act, the Attorney General was notified pursuant to 28 U.S.C. § 2403 and invited to intervene. Although the Government decided not to intervene, the Department of Justice filed a brief amicus curiae. After holding an evidentiary hearing on May 15, 1979 to consider plaintiffs' application for fees, the Court now issues its findings of fact and conclusions of law under the Court of Appeals' ruling in *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*).

## I. INTRODUCTION

Because of its relevance to later dispositions, the somewhat unusual procedural background of this litigation will be described in some detail. The culminating February 1977 order in this case represented the completion of two separate lawsuits

---

1. As the procedural history set forth below details, the October 1976 complaint instituted a second lawsuit alleging approximately the same violations of law and requesting the same relief as an earlier complaint filed by the same plaintiffs. *See infra.*

2. An earlier order dated December 6, 1976 granted immediate relief to plaintiffs to alleviate overcrowding in the receiving room cells at DCC. Both the order itself, Doc. 20, and the later published opinion indicate that the December 6th order was grounded solely on the Eighth Amendment's proscription against cruel and unusual punishment. *Anderson v. Redman*, 429 F.Supp. 1105, 1121 (D.Del.1977).

filed in the District of Delaware arising out of the identical set of facts and circumstances. The first case, bearing the docket number 76–202, began in May or June of 1976 when Gary A. Myers, then a staff attorney with CLASI, visited DCC on an unrelated matter and came into contact with a few prisoners, some of whom later became named plaintiffs in this case, who complained to him about the overcrowded conditions there and sought his assistance in instituting suit. A complaint, captioned *Anderson v. Redman* and bearing the docket number 76–202 was filed in District Court on June 14, 1976. That litigation progressed through the summer, while Mr. Myers took defendant Redman's deposition and motions and affidavits were filed in support of a class action certification.

On October 8, 1976, the parties convened in chambers for a conference in order to resolve a procedural dilemma created by a Fifth Circuit decision dated September 27, 1976, *Costello v. Wainwright*, 539 F.2d 547 (1976) (en banc), which held that when prisoners attacked the overcrowding of a state correctional system and requested relief that touched upon the constitutionality of and would impinge upon the operation of a state statute, a three-judge court would have to be convened under the old three-judge court act, 28 U.S.C. § 2281. Meanwhile, in August of 1976, Congress repealed 28 U.S.C. § 2281, abolishing the requirement that a three-judge panel sit as a district court when the constitutionality of a state statute is called into question. That repeal, however, would not have affected 76–202 because a savings clause left unaffected cases pending at the effective date of the repeal. Were the Third Circuit ultimately to agree with the *en banc* decision in *Costello*,[3] a second trial might have been necessary. Because all parties wished to avoid the uncertainty, it was agreed that the most simple solution would be to file a new complaint, thereby removing this litigation from the scope of the old three-judge

court act and eliminating any doubt as to the jurisdiction of a single judge to hear the dispute.

Because the parties had already agreed to a trial date in 76–202, expeditious action was required. The parties agreed to an expedited pleading and briefing schedule. A new complaint was filed on October 25, 1976 similar but not identical to that in 76–202. The docket number of that second complaint, now the operative complaint of this case, is 76–364. Defendants filed an answer on the 11th of November. By the 15th of November, class certification had been ordered and trial commenced as planned on November 22, 1976. Thus, less than a month elapsed between the filing of the complaint in 76–364 and the beginning of trial. While Mr. Myers and his colleague Mr. Schab, along with defendants' counsel, were preparing for trial, Congress passed the Civil Rights Attorney's Fees Awards Act of 1976 on October 19, 1976.

Defendants assert three initial barriers to any award of fees to plaintiffs' counsel. They raise the statutory argument that Congress did not intend to permit the award of fees when a plaintiff prevails only on his state-law claims if the federal claims are never reached. Alternatively they argue that even if Congress had so intended, an award of fees against a state under § 1988 for work performed on pendent claims, as distinct from any award for success on federal claims, is an improper exercise of congressional authority under § 5 of the Fourteenth Amendment. Third, defendants raise as a defense CLASI's corporate by-laws, which in 1976 ostensibly prohibited CLASI's attorneys from undertaking representation in cases where a statutory fee is available.

Defendants also raise a series of objections to certain of counsel's claimed hours as unreasonable, poorly recorded, or as not representing the exercise of professional judgment. Each of these categories of defenses will be considered in turn.

---

**3.** Eventually, in March of 1977, the Supreme Court reversed the Fifth Circuit's decision in *Costello*. *Costello v. Wainwright*, 430 U.S. 325, 97 S.Ct. 1191, 51 L.Ed.2d 372 (1977) (per curiam).

## II. STATUTORY AND CONSTITUTIONAL CONTENTIONS

■ Defendants first challenge any award of fees for time spent by plaintiffs' counsel in the litigation of pendent state-law claims, given that the federal claims, although raising substantial federal issues, were not reached by this Court.[4] The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, * * * the court, in its discretion, may allow the prevailing party, other than the United States a reasonable attorney's fee as part of the costs.

Defendants argue that nothing on the face of § 1988 purports to allow fees for parties who do not prevail on their federal claims and, invoking a time-worn maxim, they further contend that if nothing on the face of the statute covers fees for pendent state-law claims, plaintiffs are precluded from raising legislative history in an attempt to alter or amend a clear and unambiguous statute. This Court rejects defendants' argument because it is unequivocally rejected in the legislative history of § 1988 and because the unanimous weight of authority supports plaintiffs' position that Congress intended the award of fees for work performed relating to state-law claims if unaddressed federal claims are substantial and arise out of the same operative facts.

The House Judiciary Committee Report addressed itself to the preference of federal courts to rest a decision on an adequate state-law ground, if one is available, in order to avoid unnecessary constitutional adjudication.

> To the extent a plaintiff joins a claim under one of the statutes enumerated in [the Act] with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination of the other claim for the purpose of awarding counsel fees. *Morales v. Haines*, 486 F.2d 880 (7th Cir. 1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the nonconstitutional claim is dispositive. *Hagans v. Lavine*, 415 U.S. 528 [94 S.Ct. 1372, 39 L.Ed.2d 577] (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Lavine, supra*; *United Mine Workers v. Gibbs*, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966), attorneys' fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers v. Gibbs, supra* at 725 [86 S.Ct. 1130].

H.R.Rep.No.1558, 94th Cong., 2d Sess. 4 n. 7 (1976). This Court agrees with at least three Courts of Appeals that this statement presents as strong an indication of congressional intent on the question as could reasonably be expected. *See Gagne v. Maher*, 594 F.2d 336, at 340 (2d Cir. 1979); *Kimbrough v. Arkansas Activities Association*, 574 F.2d 423, 426–27 (8th Cir. 1978); *Seals v. Quarterly County Court*, 562 F.2d 390, 394 (6th Cir. 1977). Several lower courts have reached the identical conclusion. *See White v. Beal*, 447 F.Supp. 788, 793–94 (E.D.Pa.1978); *Lund v. Affleck*, 442 F.Supp. 1109, 1112–13 (D.R.I.1977); *La Raza Unida v. Volpe*, 440 F.Supp. 904, 911 (N.D.Cal.1977).

Defendants point to the Third Circuit Court of Appeals' recent decision in *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir. 1978), which held that nothing in the Clayton Act's provision for attorneys' fees permitted additional com-

---

4. As noted above, one ruling was made on a constitutional ground. *See* note 2 *supra*. Defendants do not contest plaintiffs' entitlement to fees for any time spent obtaining that ruling. Plaintiffs' counsel, however, state that they cannot segregate any hours as relating solely to the constitutional ruling. In view of this Court's ruling that hours spent on litigation of state-law claims are compensable, any segregation of hours is unnecessary.

pensation to counsel for work relating solely to a state-law claim upon which a party was successful. *Id.* at 1215–16. If this Court were writing on a clean slate vis-a-vis the Fees Act, the Court of Appeals' holding in *Baughman* might well be apposite, but in light of the legislative history cited above and the authorities opposed to defendants' position, this Court is compelled to view the Court of Appeals' construction of the Clayton Act as irrelevant to the present controversy.

■ As their second line of attack, defendants contend that even if the Fees Act is construed as allowing an award to parties who prevail on pendent state-law claims when federal grounds are never reached, such a construction of the Act constitutes an improper exercise of congressional authority under § 5 of the Fourteenth Amendment. In light of the Supreme Court's decision in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), holding that Congress in enacting § 1988 intended to abrogate the States' Eleventh Amendment immunity to suit in federal court, defendants cannot now argue that § 1988 is an improper exercise of congressional authority under § 5 of the Fourteenth Amendment when fees are awarded on a federal constitutional claim. That question has been answered authoritatively. Rather, defendants would have this Court distinguish, for Eleventh Amendment purposes, between an award taxed against a state treasury for plaintiff's success on a federal claim and one taxed for success on a pendent state claim. Unfortunately, defendants propose no theory upon which to base such a distinction but simply suggest that this Court require a highly explicit indication in the legislative history that the abrogation of immunity intended by Congress extends as well to decisions on pendent state-law claims. Given the Supreme Court's pronouncement in *Hutto v. Finney,*

*supra,* that the Fees Act "could not be broader," *supra* at 694, 98 S.Ct. 2565, and the extensive expressions of congressional intent that awards against state officials be taxed against state treasuries,[5] the Court can think of no reasonable basis for making the distinction that defendants press. It is concluded that no statutory or constitutional impediment exists to an award of fees to Mr. Myers and Mr. Schab.

## III. THE REPRESENTATION QUESTION

Defendants' second broad argument against an award of fees in favor of Mr. Myers and Mr. Schab focuses on what defendants assert was a violation of CLASI's corporate by-laws. At the time that plaintiffs instituted suit in June of 1976, the by-laws of the Community Legal Aid Society, Inc., a Delaware non-stock corporation, instructed that "cases in which a statutory or contingent fee is available shall not be handled."[6] Contending that CLASI was ineligible to represent plaintiffs because at the time that this lawsuit was filed in October of 1976, the Civil Rights Attorney's Fees Awards Act had created the possibility of a statutory fee award,[7] defendants argue that they are proper parties to complain of the internal propriety of CLASI's representation by virtue of the Third Circuit's decision in *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir. 1976), discussed extensively below.

Simply as an initial note on the representation question, to denominate this litigation, filed in 1976 against two state officers in their official capacities, as one that was "fee-generating," may be a definitional error of the grossest sort. Though *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), decided in early 1976 and holding that Congress may abrogate the States' Eleventh Amendment immunity through the exercise of its broad powers under § 5 of the Fourteenth Amendment,

---

**5.** *See Hutto v. Finney, supra* at 695 and n. 24, 98 S.Ct. 2565.

**6.** Article III, Section I, By-Laws of the Community Legal Aid Society, Inc., Doc. 105 (Exhibit E).

**7.** The Complaint, Doc. 2, in 76–364 was filed on October 29, 1976, ten days after the passage of the Fees Act on October 19, 1976.

provided more than a clue as to the Supreme Court's ultimate ruling when it confronted the Eleventh Amendment issue implicit in § 1988, a particular case cannot truly be called "fee-generating" unless it is reasonably likely that a member of the private bar would so regard it. That the Supreme Court had not yet decided with finality whether § 1988 abrogated the States' Eleventh Amendment immunity in 1976 and indeed did not resolve the question until *Hutto v. Finney, supra*, was handed down in 1978 makes it highly questionable that any member of the private bar would have regarded this litigation as the likely source of a fee award in late 1976.

■ Be that as it may, what will here be termed the "representation" question raises a troublesome preliminary issue. At all times material to this litigation, CLASI has received a substantial amount of federal funding under the auspices of the Legal Services Corporation, a federal corporation, one of whose purposes is providing funding for organizations like CLASI. The Legal Services Corporation Act, codified at 42 U.S.C. §§ 2996a–*l*, (hereinafter "Corporation Act") provides:

> No funds made available by the Corporation under this subchapter, either by grant or contract, may be used to provide legal assistance (except in accordance with guidelines promulgated by the Corporation) with respect to any fee-generating case (which guidelines shall not preclude the provision of legal assistance in cases in which a client seeks only statutory benefits and appropriate private representation is not available).

42 U.S.C. § 2996f(b)(1). Under the authority of that statute, the Legal Services Corporation promulgated guidelines in August of 1976 setting forth flexible standards for use by recipients of Corporation funds when such organizations are faced with the possibility of representing clients who may benefit from an award of either contingent or statutory attorneys' fees. Those guidelines, found at 45 C.F.R. § 1609 *et seq.* (1976), require that federal funds not be used in a "fee-generating" case, defined to include cases in which either a contingent or a statutory fee may be available, unless other adequate representation, presumably from the private bar, is unavailable. *Id.* § 1609.-3; *see Rodriguez v. Taylor, supra*, at 1246. The guidelines further provide that:

> Other adequate representation is deemed to be unavailable when (a) The recipient has determined that free referral is not possible because:
>
> (1) The case has been rejected by the local lawyer referral service, or by two private attorneys; or
>
> (2) Neither the referral service nor any lawyer will consider the case without payment of a consultation fee; or
>
> (3) The case is of the type that private attorneys in the area ordinarily do not accept, or do not accept without prepayment of a fee; or
>
> (4) Emergency circumstances compel immediate action before referral can be made, but the client is advised that, if appropriate, and consistent with professional responsibility, referral will be attempted at a later time; or
>
> (b) Recovery of damages is not the principal object of the case and a request for damages is merely ancillary to an action for equitable or other nonpecuniary relief; or inclusion of a counterclaim requesting damages is necessary for effective defense or because of applicable rules governing joinder of counterclaims; or
>
> (c) A court appoints a recipient or an employee of a recipient pursuant to a statute or a court rule or practice of equal applicability to all attorneys in the jurisdiction.

*Id.* § 1609.4 (1976). Although neither plaintiffs nor defendants articulated any view as to whether these regulations superseded CLASI's by-law by operation of law, no reason is readily apparent why the Corporation Act would not mandate that CLASI and other recipients employ the Corporation's funds only in accordance with the regulations promulgated thereunder. On the other hand, where, as here, the funds recipient has formulated a policy more re-

strictive than the federal regulations but in conformity with the statutory authority, it is arguable that the recipient has fulfilled its obligations under federal law. The Court finds it unnecessary to decide whether the regulations set forth above superseded CLASI's by-law because, whether the regulation or the by-law governed CLASI's representation decisions in 1976, defendants do not have standing to complain of any impropriety.

Defendants have steadily assumed that the Community Legal Aid Society was bound to follow its own by-law's flat prohibition against the handling of statutory or contingent fee cases, at least until CLASI's Board of Directors formally adopted the Legal Services Corporation's less stringent guidelines in March of 1977. If that assumption be accurate, any transgression of that by-law would create a claim under principles of Delaware corporate law, if a claim is created at all. Defendants' difficulty, however, is that Delaware law severely constricts the categories of claimants who can raise the ultra vires defense and none of those classes describe the defendants here.[8]

Seeking to escape an insuperable standing barrier under Delaware law, defendants deftly argue that their right to challenge the internal propriety of representation arises not under state law but under federal law. More specifically, defendants claim that the Court of Appeals' decision in *Rodriguez v. Taylor, supra,* permitted the non-prevailing party to challenge the propriety of an award of fees in favor of a legal aid society similar to plaintiffs' counsel here under the same Legal Services Corporation's guidelines cited above. Thus, while they assert what is at best a violation of state law,[9] their standing to raise the violation depends wholly on federal law, and is in fact in derogation of the germane state law.

Assuming that defendants' focus is on the by-law and that the by-law controlled CLASI's conduct in 1976, defendants' argument based upon *Rodriguez* cannot be accepted. Defendants have unsatisfactorily accounted for a significant distinction between the legal question confronting the *Rodriguez* court and the one now before me. In that case, the court was faced with two seemingly conflicting federal laws. On the one hand, the Age Discrimination in Employment Act, 29 U.S.C. § 216(b) (1970), afforded the plaintiffs' counsel (Community Legal Services, Inc., a Pennsylvania nonprofit corporation) the opportunity to collect a reasonable attorney's fee. On the other, the Corporation Act appeared to preclude representation if a fee eventually could be available. *Id.* at 1244–46. The court was obliged to reconcile that conflict as a matter of federal law, and apparently the possibility that defendants should not be permitted to raise that issue was never ad-

---

**8.** Section 124 of Title 8 of the Delaware Code provides:

*Effect of lack of corporate capacity or power; ultra vires.*

No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:

(1) In a proceeding by a stockholder against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. . . . ;

(2) In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through stockholders in a representative suit, against an incumbent or former officer or director of the corporation, for loss or damage due to his unauthorized act;

(3) In a proceeding by the Attorney General to dissolve the corporation, or to enjoin the corporation from the transaction of unauthorized business.

Defendants concede that they do not have standing under 8 *Del.C.* § 124 to contest an ultra vires act.

**9.** Because defendants claim that CLASI violated its by-laws, rather than either Delaware law or the articles of incorporation, it is doubtful whether an ultra vires act in the truest sense has even been alleged, but if defendants cannot challenge an act outside of the corporate charter, then a fortiori they may not challenge a violation of the by-laws.

dressed.[10] Under defendants' theory, however, there is no conflict in federal law, but merely—taking defendants' position at its strongest—a violation of state law.[11]

■ Assuming without deciding that defendants are incorrect in their assumption that the CLASI by-law governed CLASI's representation decisions in October of 1976, and that the Corporation's guidelines governed plaintiffs' counsel, defendants again find themselves without standing to raise the issue of improper representation. In December of 1977, the Corporation Act was amended to provide the following:

No question of whether representation is authorized under this subchapter, or the rules, regulations or guidelines promulgated pursuant to this subchapter, shall be considered in, or affect the final disposition of, any proceeding in which a person is represented by a recipient or an employee of a recipient. A litigant in such a proceeding may refer any such question to the Corporation which shall review and dispose of the question promptly, and take appropriate action. This subparagraph shall not preclude judicial review available under applicable law.

42 U.S.C. § 2996e(b)(1)(B). On its face, the amendment appears to preclude the precise contention defendants press upon the Court. The legislative history indicates that Congress intended to filter any such representational questions through the Corporation itself, reserving any judicial review to simple review of agency action. The House Report explains:

[S]ince the inception of federally funded legal service, parties to lawsuits in which the opponent is represented by a ·legal services program have, from time to time, sought to avoid resolution of the issues in the suit by challenging the authority of the legal services program to provide representation in the particular case or to the particular client. Courts

that have been asked to rule upon such questions have been uniform in holding that such issues should not be raised in that forum. The courts have said that such issues should be taken up with the agency providing funding. [The amendment] is thus declaratory of existing law as it has been announced by the courts. The Committee believes that repetitive litigation of this issue is a needless drain on federal funds provided for the representation of poor people, and the section has been added to discourage further frivolous litigation of the issue.

H.R.Rep.No.95–310, 95th Cong., 1st Sess. [1977] reprinted in U.S.Code Cong. & Admin.News pp. 4503, 4510. Amplifying on what was intended by the terms "judicial review" in the statute as it passed, the Conference Report explains:

The House bill and the Senate amendment each prohibits challenges to the authority of legal services programs to provide representation in a particular case or to a particular client during the proceeding.

In addition, the Senate amendment, but not the House bill, requires that such issue shall be referred to the Corporation for review and disposition and clarifies that the party challenging the authority of the local legal services program to represent a client is not precluded from seeking judicial review of the Corporation's decision.

The conference substitute provides that no question of whether representation is authorized under this title, or the rules, regulations or guidelines promulgated pursuant to this title, shall be considered in, or affect the final disposition of, any proceeding in which a person is represented by a recipient or an employee of a recipient; that a litigant in such a proceeding may refer any such question to the Corporation which shall review and

---

10. An amendment to the Act now prohibits parties from litigating questions concerning representation in cases where recipients represent parties, reserving such claims for admin-istrative review. See note 12 infra and accompanying text.

11. See note 9 supra and accompanying text.

*dispose of the question promptly, and take appropriate action; and that judicial review of the Corporation's action or inaction is not precluded where available under applicable law.*

H.R.Rep.No.95–825, 95th Cong. 1st Sess., *reprinted in* [1977] *U.S.Code Cong. & Admin.News* pp. 4530, 4532 (emphasis added). Thus, any challenge to the scope of a Legal Services Corporation recipient must be addressed to the Corporation itself and then the Corporation's decision is subject to judicial review of administrative action. The statute apparently bars any collateral litigation of the propriety of a recipient's representation decisions. Concededly, neither the statute nor the legislative history address themselves to the specific question of fees. Nonetheless, the statute itself leaves virtually no room for exceptions or qualifications and this Court is compelled to conclude that it divests this Court of jurisdiction to review in this proceeding the propriety of CLASI's representation under the Corporation guidelines.[12]

Addressing themselves to this Court's discretion to amend or alter the fee award, defendants request that even if this Court should hold the CLASI violated no law in undertaking representation of plaintiffs, this Court should take into account the impropriety of the representation, if any, in computing the amount of fees to which CLASI is entitled. In light of the holdings recited above, it would be inappropriate for this Court to address itself to the merits of defendant's argument that the by-law was violated.

## IV. FINDINGS OF FACT WITH RESPECT TO PARTICULAR HOURS CLAIMED

Because the Court will not alter the "lodestar," [13] the only questions remaining for this Court's consideration under the Court of Appeals' decisions in *Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (en banc) (*Lindy II*); *Merola v. Atlantic Richfield Co.,* 515 F.2d 165 (3d Cir. 1975); *Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp., (Lindy I ), supra,* are what hourly rate Mr. Schab and Mr. Myers should bill and whether the number of hours claimed by counsel in the Amended Bill of Costs, in addition to later submissions, was reasonable in light of the work performed. Counsel have filed affidavits that detail the number of hours spent by each attorney and a hearing was conducted as required by *Lindy I, supra,* 487 F.2d at 169.

Plaintiffs submitted an Amended Bill of Costs with affidavits attached, in which they seek compensation for totals of 243.5 hours of Mr. Myers' time and 176 hours of Mr. Schab's.[14] These totals reflect neither hours preparing the fees application itself nor time spent preparing for and attending contempt proceedings held last August by this Court. The latter hours are not now compensable under § 1988 because plaintiffs did not prevail therein,[15] and the former hours are for the most part reflected in Plaintiffs' Fees Exhibit 3 (hereinafter "FPX 3"). Attention will be turned first to the applicable hourly rate and then the

---

**12.** Section .2996e(b)(1)(B) became law on December 28, 1977, only one day after the Third Circuit's decision in *Rodriguez v. Taylor, supra.* Needless to say, the presence of the amendment to the Legal Services Corporation Act reveals an additional weakness in defendants' contention that *Rodriguez* grants them standing. Just as this Court is now barred from considering any challenge to representation under the guidelines, so presumably would the Court of Appeals have been foreclosed in *Rodriguez,* had that case been determined after the passage of the amendment.

**13.** No party has requested that the Court alter the award to reflect the contingency factor, if any, or the superior or inferior quality of work performed.

**14.** Doc. 81, 92.

**15.** The Court continued the contempt hearing to an indefinite date because defendants complied with the Court's Order during the course of that hearing.

Amended Bill of Costs and the hours listed therein.[16]

**16.** Doc. 81 provides as follows:

I. GARY A. MYERS        HOURS

A. Pre-Trial Preparation

1. Preparation of Complaint and *In Forma Pauperis* motion and explanation of same to clients   8

2. Deposition of Walter Redman, 8/13/76, and preparation of notice of deposition   4

3. Accompanying photographer through Delaware Correctional Center (DCC) and measuring rooms   5

4. Accompanying Judge Schwartz during Court's view [sic] of DCC   3

5. Preparation of Stipulation of Facts (PX 1)   16

6. Preparation of pre-trial order   4

7. Preparation of class action motion and Certification Order with affidavits   4

8. Pre-trial conference   1

9. Interview witnesses Dill, White, Kozma, Srivastava and Keve   10

10. Preparation of incident report and population counts   6

11. Telephone conversations and letter correspondence with Dalmas Taylor   1

12. Telephone conversation with Theodore Gordon   .25

13. Telephone conversation with U. Samuel Vukcevich   .5

14. Interview with Plaintiffs in preparation of trial   6

15. Preparation of photographs and exhibit sheet   6

B. Trial

16. Attendence [sic] at trial on November 22, 24, 29 and 30 and December 2, 3 and 6, 1976   36

17. Preparation for each successive date of trial   6

18. Accompanying Dalmas Taylor to DCC 11/23/76 and preparation   12

19. Accompanying Samuel Vukcevich to DCC 11/30/76 and preparation   6

20. Preparation of motion for interim order   .25

C. Post-Trial

21. Research and writing of post-trial porposed [sic] findings of fact and conclusions of law   56

22. Conference with Judge Schwartz   1

▮ (1) The parties to this litigation have agreed that fifty dollars ($50) an hour

                HOURS

23. Traveling to DCC to obtain Defendants' brief   1

24. Research and writing of reply brief   30

25. Preparation of letter waiving oral argument   .5

26. Settlement conference with Judge Schwartz and Defendants   3

27. Discussing proposed settlement with Plaintiffs   4

28. Review of Opinion and Order of District Court   1

29. Preparation, appearance and argument on Defendant's [sic] Motion To Stay Order and for Relief under FR Civ P 60(b) [sic]   5

30. Preparation and presentation of Motion for Provision of Trial Transcript to Plaintiffs   4

31. Preparation of Original and Amended Bill of Costs   <u>3</u>

TOTAL:           <u>243.5</u>

Doc. 92 provides as follows:

II. H. WILLIAM SCHAB, JR.    HOURS

A. Pre-Trail [sic] Preparation

1. Interview witnesses Hoffrage, Shell, Klein, Kozma, Srivastava and Christian   12

2. Preparation of incident reports and population counts   12

3. Preparation of pre-trial order   1

4. Preparation of photographs and exhibit sheet   6

5. Obtaining material and books introduced into evidence   1

B. Trial

6. Attendance at trial on November 22, 23, 24, 29, 30 and December 2, 3, and 6, 1976   39

7. Preparation for each successive day of trial   6

8. Accompanying T. Gordon 12/2/76 and preparation   5

C. Post-Trial

9. Research and writing of post-trial proposed findings of fact and conclusions of law   56

10. Conference with Judge Schwartz   1

11. Research and writing of reply brief   30

12. Settlement conference with Judge Schwartz and Defendants   3

13. Discussing proposed settlement with Plaintiffs   <u>4</u>

TOTAL:           <u>176</u>

is a reasonable hourly rate for attorneys from the part of Delaware in which Mr. Myers and Mr. Schab practice. Attached to the Amended Bill of Costs are affidavits from attorneys who practice in the same geographical area as plaintiffs' counsel demonstrating that fifty dollars is, if anything, a low figure, at least for time spent in trial. Accordingly, because plaintiffs have documented the rate and defendants have stipulated to it, the Court finds that fifty dollars an hour is reasonable compensation for Mr. Myers and Mr. Schab.

■ (2) Because Mr. Myers began working on this case in June of 1976 without the expectation of receiving a fee of any sort, and because attorneys in the positions of Mr. Myers and Mr. Schab do not as a general rule keep contemporaneous time records, no such time records were kept by plaintiffs' counsel until shortly before they filed their amended Bill of Costs in May 1978. From that point forward, contemporaneous time records were maintained. As a consequence, Items 1 through 28 of Mr. Myers' schedule of fees [17] represent a reconstruction of time spent. Similarly, all of Mr. Schab's hours in the Amended Bill of Costs [18] are based upon memory. For all time spent prior to the contemporaneous time-keeping, defendants have conceded that, at least in theory, plaintiffs' counsel may recover fees for time on the basis of reconstructed time records as long as those reconstructed time records are " 'substantially reconstructed and are reasonably accurate.' " See Lindy II, supra, at 109. Under Lindy II, however, reconstructed time records must reflect more than mere estimates. Id.

Defendants argue, however, that the number of hours for which CLASI may collect must be reduced because Mr. Myers, who testified as to both his personal hours and those of Mr. Schab, was without sufficient personal knowledge of Mr. Schab's hours in order to render his testimony with respect to certain of those hours other than mere guesswork.[19] Specifically, defendants observe that since Mr. Myers was participating in the trial on December 2nd while Mr. Schab conducted a tour of DCC with Mr. Gordon, one of the plaintiffs' expert witnesses, Mr. Myers cannot have personal knowledge that Mr. Schab spent five hours taking the witness through the facility.[20] The Court concludes, however, that these five hours have been reasonably reconstructed. The witness himself testified in the afternoon with respect to his activities in the morning and noted that Schab served as his escort.

The defendants have not raised specific objections to any other items in counsel's reconstructed time records and the Court finds that the Amended Bill of Costs, together with counsel's testimony, lay sufficient foundation for recovery on the basis of reconstruction.

■ (3) Defendants also contest counsel's right to compensation for hours consumed in the administration of clerical or typing duties. In Mr. Myers' case, such time amounts to twelve hours in total [21] and in Mr. Schab's case the total is eighteen hours. In Baughman v. Wilson Freight Forwarding Co., supra at 1217, the Third Circuit held that when attorneys consume time in the performance of chores as to which the exercise of their professional judgment is

---

17. See id. (Items 1–28).

18. Id. Doc. 92.

19. Note 16, supra; Doc. 92 (Item B8).

20. Mr. Schab did not testify as to his hours because he was conducting the direct cross-examination of Mr. Myers at the evidentiary hearing held on the fees application. Except for the few hours discussed in the text, however, Mr. Myers and Mr. Schab were either in each other's company or in the presence of defendants' counsel so that either Mr. Myers or counsel for

defendants has personal knowledge of Mr. Schab's compensable time.

21. Note 16, supra; Doc. 81, Schedule 5 (Items A10 and A15); Doc. 92 (Items A2 and A4). This number does not include time spent on ministerial chores in connection with the fees application. See infra. Moreover, Mr. Myers testified that some portion of the hours listed for both attorneys was consumed in what may fairly be characterized as their legal capacities. He did not pinpoint, however, what portions would be recoverable on that basis and consequently, no allowance will be made.

not required, the hourly rate with respect to that time must be reduced to reflect the function performed. Because the plaintiffs bore the burden of proving the number and reasonableness of the hours worked, and because counsel have not suggested what hourly rate should apply to the time consumed in clerical activities, it is concluded that plaintiffs' counsel may not receive any amount for those hours. Also because plaintiffs had the burden of proof, plaintiffs' estimates of time spent on ministerial rather than legal tasks will be discounted at plaintiffs' maximum estimate. Consequently, Mr. Myers' total number of billable hours is reduced by twelve and Mr. Schab's is reduced by eighteen.

■ (4) Mr. Myers has also sought compensation for one hour spent driving to pick up one of defendants' briefs left at the Delaware Correctional Center in Smyrna rather than served upon Mr. Myers in Georgetown.[22] Again, defendants' objection is that the trip did not involve the exercise of professional judgment and is not compensable under the Fees Act, presumably because Mr. Myers could have sent a messenger for the brief. Because defendants' breached their obligation to serve papers on the opposing side, the Court finds that Mr. Myers is entitled to be compensated for the one hour.

(5) Finally, defendants dispute the reasonableness of the hours consumed by Mr. Myers and Mr. Schab in the preparation of the posttrial opening and reply briefs.[23] Plaintiffs' counsel have claimed a total of 56 hours each for the opening brief and thirty hours each for the reply brief. Although the power to question the number of hours spent by counsel on a particular project rests within the Court's discretion under *Lindy I, supra*, variations in both the experience and productivity of lawyers exist, and this Court is not inclined to make mincing judgments with respect to how many numbers of hours a particular piece

of legal writing is worth in the analysis of the fees petition. Thus, unless the claimed hours for briefing are so out of proportion to the product for which they are claimed as to be unreasonable under any circumstances, no reduction in the number of hours will be made.

Under that standard, it is readily apparent that no reduction of hours should be made with respect to the opening brief, which was 71 pages in length and cited a plethora of cases, statutes and other authorities. Moreover, a class action of this sort demands that the factual setting be described with considerable clarity and specificity and Mr. Myers and Mr. Schab were careful to document every statement with its evidentiary support. Considering the opening brief in its entirety, no reduction in the claimed hours is warranted.

■ On the other hand, plaintiffs' counsel have billed a total of sixty hours for their posttrial reply brief and an inspection of the ultimate product reveals that the claimed hours are excessive. The Court is not unaware that in writing a brief, lawyers may consume considerable time pursuing dead ends but, at least in a reply brief, counsel know what issues must be confronted. As defendants have emphasized, the reply brief, only 21 pages long, does not reflect much, if any, new or additional research. The Court finds that sixty hours was an unreasonable amount of time to consume on the reply brief, in which counsel were required to respond to only two issues raised in the defendants' answering brief, and that counsel should be allowed to recover for only one half of those hours.

■ (6) Plaintiffs have requested an award of fees for some hours accumulated in 76–202 while Mr. Myers deposed defendant Redman and while accompanying a photographer through DCC.[24] Because of the close relationship between the two lawsuits and because defendants do not contest an

---

22. *Id.*, Doc. 81 (Item 23).

23. *Id.*, Doc. 81 (Items 21 and 24); Doc. 92 (Items 9 and 11).

24. *Id.*, Doc. 81 (Items A2 and A3).

award for these hours if they fail on their broader attacks, plaintiffs may recover fees for those hours.

■ (7) Defendants have not challenged any other of the plaintiffs' itemized bill and the Court's independent review of the time claimed for a miscellany of letters, motions, pleadings, and conferences are well within the bounds of reason for litigation of this nature. Consequently, taking into account the limited exclusions set forth above, Mr. Myers and Mr. Schab will be permitted to recover for all time recorded on their Amended Bill of Costs, for a total of 359.5 hours.

■ (8) Remaining for consideration are submissions for time spent primarily for Mr. Myers but also for Mr. Schab on litigation of the claim for attorneys' fees. At the evidentiary hearing on fees, plaintiffs' counsel submitted a time sheet listing a total of 49.5 hours expended since the filing of their Amended Bill of Costs in May of 1978, Plaintiffs' Fees Exhibit 3 ("FPX 3"). In addition, at the close of the hearing counsel orally applied for 20 hours of compensable time attributable to the preparation for the evidentiary hearing and their courtroom time on May 15, 1979. Finally, in response to the Court's request for additional briefing on a point of law relevant to the fees application, Mr. Myers submitted a letter memorandum at the close of which he requested fees for five hours spent researching and writing that five-page memorandum. Thus, the total requested for both attorneys is 74.5 hours on the fees application. The first item on Plaintiffs' Fee Exhibit submitted to the Court reflects time already accounted for in the Amended Bill of Costs above and hence the Court finds that three hours for Item 1 must be subtracted from the total requested for the fees petition.

■ (9) Defendants again challenge the right of plaintiffs to recover fees for time spent in the performance of clerical duties. In this case, the schedule of hours spent on the fees petition indicated that eleven hours were spent by Mr. Myers typing and proofreading one of the briefs submitted by him in connection with the fees application.[25] For the same reason articulated above with respect to the clerical time spent in the principal litigation, the Court finds that plaintiffs' counsel are entitled to recover for none of the clerical work performed.

■ (10) Mr. Myers has listed time spent traveling to and from certain court appearances and conferences.[26] The Court finds that Mr. Myers is entitled to recover for this travel time. First, defendants have not contested an award for it, and second, very little of any substance can be accomplished by a lawyer during automobile travel to a required appearance.

In summary, with a reduction of 11 hours for time spent on clerical functions and three hours already compensated on the Amended Bill of Costs relating to the principal litigation, the Court finds that the plaintiff's counsel's claimed hours are reasonable and plaintiffs are entitled to recover for a total of 60.5 hours on the Fees Application.

Because it is held that plaintiff may recover fees, with certain rather limited exceptions, for a total of 420 hours under the Fees Act, there is no occasion to consider and the Court expresses no opinion upon whether plaintiffs would be entitled to recover fees independently on the ground that the defense was conducted in bad faith.

An order will be entered in conformity with this Opinion.

---

**25.** FPX 3 (Items dated Nov. 3, 1978 and Nov. 6, 1978).

**26.** FPX 3 (Items dated May 8, 1978, Nov. 22, 1978, and Jan. 18, 1979).