Steve Randy HOLLAND, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Ronald C. STEELE, Individually and in his official capacity as Sheriff of Dade County, Georgia, Defendant.

Civ. A. No. C81–174R.

United States District Court, N. D. Georgia, Rome Division.

Oct. 21, 1981.

**60**

John Riemer and Wendy Glasbrenner, Dalton, Ga., Michael A. Mogill, Gainesville, Ga., Robert J. Cullen, William J. Cobb, and John L. Cromartie, Atlanta, Ga., for plaintiffs.

Archibald A. Farrar, Jr., Summerville, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

In this civil rights action plaintiff seeks an order prohibiting defendant from restricting plaintiff's access to counsel and to the courts in civil matters.

Pending before the Court is plaintiff's motion for class certification pursuant to Rule 23(a) and (b)(2), Fed.R.Civ.P. Plaintiff seeks to have certified as a class all persons who are or will be detained in the Dade County Jail in Trenton, Georgia.

█ I. As a preliminary matter, defendant questions the eligibility of any class to be represented by attorneys who are employees of a grantee of the Legal Services Corporation. 42 U.S.C. § 2996. Defendant argues that, inasmuch as the plaintiff class may contain members who are not qualified in their own right to receive legal assistance from the grantee, Georgia Legal Services, Inc., the class may not therefore be represented by the grantee. In addition, defendant cites a similar statutory prohibition against a Legal Services' grantee accepting any "fee-generating" employment. 42 U.S.C. § 2996f(b). Since attorney's fees are allowable in civil rights cases, 42 U.S.C. § 1988, defendant contends that plaintiff's attorneys are therefore ineligible in this case.

These assertions are without merit in that this is neither the proper forum nor appropriate proceeding to voice such objections. Under 42 U.S.C. § 2996e(b)(1)(B), the determination of the propriety of grantee representation of specific litigants is within the jurisdiction of the Legal Services Corporation.

> *No question of whether representation is authorized under this subchapter, or the rules, regulations, or guidelines promulgated pursuant to this subchapter, shall be considered in, or affect, the final disposition of any proceeding in which a person is represented by a recipient or an employee of a recipient. A litigant in such proceeding may refer any such question to the Corporation which shall review and dispose of the question promptly, and take appropriate action.* This subparagraph shall not preclude judicial review available under applicable law. (emphasis supplied).

That this represents more than a hollow statutory pronouncement is evidenced by Congress' delegation of authority to the Corporation to take appropriate steps to

combat improper representations by its grantees (recipients). At 42 U.S.C. § 2996e(b)(1)(A), the Corporation is given authority to insure compliance with the statute and regulations promulgated thereby by terminating "after a hearing in accordance with section 2996j of this title, financial support to a recipient which fails to comply."

The conclusion that this challenge is one which the Court is without authority to hear in the first instance is affirmed by legislative history. In 1977, Congress amended the Legal Services Corporation Act to include subsection (b)(1)(B) to prevent a challenge such as the one raised by the defendant. As the House Report stated:

> [T]he Corporation is charged with insuring compliance of recipients and their employees with the Act, and, after a hearing, may terminate financial assistance to the recipient. In addition, a recipient may take appropriate remedial or disciplinary action against an employee who has violated the Act, rules, regulations, or guidelines. Therefore, an internal mechanism exists for complaints about operations of local programs, including the eligibility of specific clients. Also, programs are monitored several times a year by the Corporation.
>
> However, since the inception of federally funded legal services, parties to lawsuits in which the opponent is represented by a legal services program have, from time to time, sought to avoid resolution of the issues in the suit by challenging the authority of the legal services program to provide representation in the particular case or to the particular client. Courts that have been asked to rule upon which questions have been uniform in holding that such issues should be taken up with the agency providing funding. [The amendment] is thus declaratory of existing law as it has been announced by the courts. The Committee believes that repetitive litigation of this issue is a needless drain of federal funds provided for the representation of poor people, and the section has been added to discourage further frivolous litigation of the issue.

H.R.Rep.No. 95–310, 95th, Cong., 1st Sess. [1977] reprinted in *U.S.Code Cong. & Admin.News* pp. 4503, 4510.

In spite of the clear language of the statute, defendant argues that the final sentence of subsection (b)(1)(B) pertaining to judicial review of Corporation action authorizes his present challenge. A similar objection was raised in *Anderson v. Redman,* 474 F.Supp. 511 (D.Del.1979). In that case, the court interpreted that clause as showing Congressional intent to filter any such representational questions through the Corporation itself, reserving any judicial review to simple review of agency action. *id* at 519. Moreover, the court cited the legislative history of the conference bill (found at H.R.Rep.No. 95–825, 95th Cong. 1st Sess. [1977] reprinted in *U.S.Code Cong. & Admin.News* pp. 4530, 4532), and concluded that the "statute apparently bars any collateral litigation of the propriety of a recipient's representation decisions." *Anderson v. Redman, supra* at 520.

Other cases have ruled consistently on this point. In *Martens v. Halls,* 444 F.Supp. 34 (S.D.Fla.1977), the court held that "the determination of 'eligibility' is an administrative decision within the scope of decision of the Corporation and its recipients." 444 F.Supp. at 35. Likewise, in *McManama v. Lukhard,* 616 F.2d 727 (4th Cir. 1980), the court held that the district court erred in requiring plaintiff to respond to a propounded interrogatory as to whether the legal aid society had referred plaintiff to a lawyer referral service, in compliance with the statutory provision against a grantee accepting fee-generating cases. Although finding the error harmless, the court held that "[t]his is precisely the sort of question that the Legal Services Corporation Act and its implementing regulations require to be submitted to the Corporation, subject to judicial review." 616 F.2d at 730. *See also, Brame v. Ray Bills Finance Corporation,* 76 F.R.D. 25, 27 (N.D.N.Y.1977) ("A number of courts have indicated that the decision of a legal services organization to represent a particular individual is not a proper matter to be reviewed by the courts").

■ In addition, defendant asserts that certification should be withheld pending a "showing by the plaintiff's attorneys that they have complied with" 42 U.S.C. § 2996e(d)(5) "to show that they are qualified in proceeding with the appropriate class action procedure." Defendant's Brief in Opposition to Plaintiff's Motion for Class Certification.

This objection is likewise void of merit. Besides being an internal Legal Services Corporation matter, the request has no relevance at all when inquiring about the propriety of class certification. Defendant's objection is no more appropriate than requiring attorneys who represent public bodies in various litigation to likewise "show proof" that the public bodies had properly selected their own legal counsel. In both instances, internal procedure and the code of ethics are the primary guidelines governing representation. Nonetheless, the Project Director of Georgia Legal Services is a named attorney in this case, and thus that statutory provision has been complied with.[1]

■ Finally, defendant requests that the Court look behind the affidavit in support of plaintiff's motion to proceed *in forma pauperis*. The purpose for this request, beyond being an additional target for defendant's attack on plaintiff's counsel's ability to proceed in this case, is not apparent. Defendant intimates in his brief that it is for the purpose of attacking this action as frivolous. In the Court's view, the fact that both a temporary restraining order and a preliminary injunction have been issued in this case regarding defendant's visitation regulations removes this case from the category of frivolity.

Moreover, the Court will not discount an affidavit of poverty merely because defendant asserts that the Court is qualified to do so. Defendant has raised no objections to the *in forma pauperis* application that would tend to question plaintiff's claim of lack of sufficient funds to pay costs and security in this action, nor has defendant argued that plaintiff, because of his financial status, would be unable to bear the economic burden of this class action. Aside from that issue, the financial ability of the named plaintiff is generally irrelevant to the issue of the propriety of class certification. *Klein v. Checker Motors Corp.*, 87 F.R.D. 5 (N.D.Ill.1979).

II. We come, therefore, to plaintiffs' motion for class certification. Defendant has filed no point-by-point objection to the assertions in plaintiffs' brief, but rather contends that class certification of all persons detained at the Dade County Jail would be inappropriate in light of a jail population composed of pre-trial detainees and those persons serving sentences after conviction (sentencees). The Court will address that issue further in the order.

A. Rule 23, Fed.R.Civ.P., governs class actions in federal courts. The prerequisites of a class action are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(a) Fed.R. Civ.P.

Once the requirements of subsection (a) are met, the Court must also find that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Rule 23(b)(2), Fed.R.Civ.P.

### 1. *Numerosity*

The plaintiff's allegations are sufficient to comply with the requirements of Rule

---

1. The regulations governing the Legal Services Corporation and its recipients are found at 45 CFR § 1600 *et seq.* (1980).

   Section 1609 concerns fee generating cases.
   Section 1611.5 concerns determination of eligibility, and provides that a recipient may provide legal assistance to a group, corporation or association if it is "primarily composed of persons eligible for legal assistance under the act." 45 CFR § 1611.5(c)(1).
   Section 1617.4 concerns regulations for approval of class action litigation.

23(a)(1). There must be some evidence or a reasonable estimate of the number of purported class members. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1036, 1038 (5th Cir. 1981). At least 40 inmates and detainees will be housed in the jail in the next twelve months.

▮ Moreover, the proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other factors. *Phillips v. Joint Legislative Committee, etc.*, 637 F.2d 1014, 1022 (5th Cir. 1981). "Smaller classes are less objectionable where, as in the case before us, the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975). Any class consisting of inmates at an institution is likely to include individuals who were unidentifiable at the time the class was certified. *Powell v. Ward*, 487 F.Supp. 917 (S.D. N.Y.1980).

▮ Here, plaintiff seeks access to counsel and the courts for himself, others presently in the jail and those inmates or detainees who will be housed there in the future. The requirement of Rule 23(a)(1) is clearly met for joinder of unknown individuals is certainly impracticable. *id.; Phillips v. Joint Legislative Committee, etc., supra.*

2. *Common Questions of Law or Fact*

▮ In the present case, there are common factual questions as to acts, omissions, and policies of the defendant in denying access to counsel to the inmates of the jail. In addition, there is a common question of law raised by the plaintiff as to whether the practices of the defendant constitute a violation of the rights afforded under the Sixth and Fourteenth Amendments of the United States Constitution, as well as the Constitution of the State of Georgia.

At some point in this litigation, there may arise issues as to the distinction between the rights to counsel of detainees and of sentencees. The Court intimates no predilection as to the outcome of that controversy, but holds that it presents no problem at the class certification stage. As the Fifth Circuit held in *Walker v. Jim Dandy Co.*, 638 F.2d 1330, 1336 (5th Cir. 1981):

Although there need not be identity of claims, there must be common elements of law or fact such that the class action would be an economical way of prosecuting and defending claims . . . . We recognize, however, that the typicality required is not so rigid as to comprehend only similar fact situations . . . . It would be a better test for typicality to consider whether the types of facts or evidence were typical of the class . . . . The common goal of this evidence is the proof of the question of fact common to all of the class members. . . .

Citing *Hebert v. Monsanto*, 576 F.2d 77, 80 (5th Cir. 1978).

3. *Typicality*

▮ While this requirement is similar in most respects to the preceding prerequisite, the focus here is on the claim of the representative party, not the class as a whole.

The representative party is a detainee at the Dade County Jail who was denied access to counsel, and thus is a member of the class that he seeks to represent. The requirement that the named party's claims be "typical" of the class, Rule 23(a)(3), Fed.R. Civ.P., does not mean that all claims be identical. As was stated in the context of a racial discrimination employment case,

Rather, a named plaintiff who has allegedly suffered racial discrimination may bring an "across the board" class action to represent all persons who have suffered from the same discriminatory policy whether or not all have experienced discrimination in the same way.

*Phillips v. Joint Legislative Committee, etc., supra,* at 1024.

In addition, the Supreme Court has held that "typicality" is met when a "class representative [is] part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1976).

Plaintiff's claim is typical of the class of inmates denied access to counsel at the jail. The defendant's policy allegedly applied "across the board" to all under his supervision. Denial of access to plaintiff was not grounded in some reason atypical from the rest of the class.

### 4. *Adequate representation*

■ Two factors are critical in determining whether an individual is an adequate representative:

(1) [T]he representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel.

*Gonzales v. Cassidy,* 474 F.2d 67, 72 (5th Cir. 1973). *Accord Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–63 (2nd Cir. 1968), *rev'd on other grds.,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

The plaintiff's interest is in no way antagonistic to the interests of other potential class members. Moreover, the named plaintiff is represented by a team of attorneys associated with the Georgia Legal Services Program, Inc., a statewide legal services program with experience in conducting class litigation, especially in the civil rights field.

It is thus clear that plaintiff has met his burden under Rule 23(a).

■ B. Under Rule 23(b)(2), class certification is proper if the requirements of 23(a) are met and the "party opposing the class has acted or failed to act on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole."

The action or inaction of the defendant does not have to be effective or completed with reference to each member of the class, so long as it is based on grounds which have general application to the class. 3B Moore's Federal Practice ¶ 23.40[2], at 23–290; *Jones v. Diamond, supra.*

Moreover, Rule 23(b)(2) was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices. *Penson v. Terminal Transport Co. Inc.,* 634 F.2d 989, 993 (5th Cir. 1981). The plaintiff seeks only injunctive and declaratory relief, which would inure to the benefit of the entire class.

In *Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 177, 94 S.Ct. at 2152, the Supreme Court held that a court has no power under Rule 23 "to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Be that as it may, defendant has apparently requested the Court to make such inquiry on the basis that he will necessarily deal with pretrial detainees in a different manner than sentencees. Thus, it is argued that the sentencees are not properly part of the plaintiff class.

■ The conditions of our prisons and jails are frequently subjects of litigation. The constraints of facilities frequently require the housing of sentencees in the same institution with detainees. *See, Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975). With such occurrences come the questions of the distinctions between treatment accorded detainees and sentencees.

In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), which defendant cites as authority for permissible disparity in treatment, the Supreme Court reversed the Second Circuit's opinion regarding a number of procedures governing a correctional facility containing detainees and sentencees. The Court hinted at, but did not set out, the differences between these two sets of inmates, 441 U.S. at 546 and n. 28, 99 S.Ct. at 1877 and n. 28. In terms of security precautions, the Court noted escape tendencies of detainees may be far greater than those of sentencees. id.

In *Marcera v. Chinlund,* 595 F.2d 1231 (2nd Cir. 1979), the court held that including sentencees offenders in the class of detainees was an abuse of discretion.

Whatever constitutional right a sentenced offender may have to contact visitation ... is primarily a matter of the Eighth Amendment's prohibition of cruel and unusual punishment. This question is fundamentally different from the due process right of the pretrial detainee to be subjected to no greater restrictions on his liberty than are necessary to ensure either his attendance at trial or the security of the institution in which he is held.

595 F.2d, at 1236 n. 7. The opinion, which went on to grant relief to the detainees in terms of contact visitation was vacated and remanded in light of *Bell v. Wolfish, supra. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979).

A different result is preliminarily appropriate in this case, notwithstanding the Supreme Court's reasoning in *Wolfish.* Presently, this case does not concern jail conditions or visitation rights, although these claims could be appended later. Rather, the Court is faced with a quantitatively different issue of access to counsel and courts. At first blush, these rights attach to detainees and sentencees alike, and present no obstacle to the certification of a class comprised of all those detained in the Dade County Jail.

For this reason, the Court will include sentencees in the plaintiff class at this time. If it appears that a constitutional deprivation has occurred, and that the Constitution warrants different results as between the sentencees and detainees, the Court can then construct a subclass or decertify the sentencees.

ACCORDINGLY, plaintiff's motion to certify as a class all persons who are or will be confined in the Dade County Jail is GRANTED.