**Michael LAKE, individually and on behalf of all persons similarly situated, Plaintiff,**

v.

**John SPEZIALE, in his official capacity of Chief Justice of the Connecticut Supreme Court, and on behalf of all Superior Court Judges of the State of Connecticut, and**

**Maurice Sponzo, in his official capacity as Chief Court Administrator of the State of Connecticut, and on behalf of all Superior Court Judges of the State of Connecticut, Defendants.**

**Civ. A. No. N–83–346 (TFGD).**

United States District Court,
D. Connecticut.

Feb. 22, 1984.

Michael O. Sheehan, New Haven Legal Assistance Assoc., Inc., New Haven, Conn., Patricia Kaplan, Valley Legal Assistance, Derby, Conn., for plaintiff.

Joseph X. Dumond, Jr., Stephen J. McGovern, Asst. Attys. Gen., Hartford, Conn., for defendants.

### RULING ON MOTION FOR PRELIMINARY INJUNCTION

DALY, Chief Judge.

Plaintiff, Michael Lake, brings this action as an individual plaintiff and also as a putative class representative seeking declaratory and injunctive relief against the Superior Court Judges of the State of Connecticut. Plaintiff raises his claims pursuant to 42 U.S.C. § 1983. The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3) & (4). Plaintiff seeks to certify a class, Rule 23, Fed.R.Civ.P., consisting of persons who are or will be under a support order existing for the benefit of the State of Connecticut, who also are or will be in arrears under such a support order and therefore face or may face the threat of incarceration in civil contempt proceedings, and who are indigent and unable to procure counsel to represent them at these proceedings. The relief that plaintiff seeks, individually and for the putative class, on the motion now before the Court, is a preliminary injunction running against a proposed defendant class of the Superior Court Judges of the State of Connecticut, requiring each and all of them to advise each and all members of the putative plaintiff class of their right to counsel and of their right to appointed counsel if found to be indigent in such civil contempt proceedings. In addition to the motion for a preliminary injunction, the Court will also address plaintiff's motion for class certification and the defendants' motion to dismiss.

Michael Lake alleges in his complaint that the refusal of the Judges of the Superior Court to advise indigent individuals of

their rights to counsel in these civil contempt proceedings "was and continues to be in violation of the plaintiff['s] ... Sixth Amendment right to counsel, incorporated by references in the Fourteenth Amendment," Complaint, ¶ 25. Additionally, the plaintiff alleges that these actions "deprive the plaintiff ... of [his] liberty without due process of law in violation of the Fourteenth Amendment." Complaint, ¶ 26. Specifically, Michael Lake alleges that he was subjected to a civil contempt proceeding, on or about May 3, 1983, which related to back payment due under a support order for the benefit of the State of Connecticut. The plaintiff was not represented by counsel at the contempt hearing and he alleges that "due to his indigency, [he] was unable to secure representation by counsel at the contempt proceeding." Complaint, ¶ 13. Plaintiff further alleges that as a result of the contempt proceeding, he was incarcerated for twenty four days. Complaint, ¶ 14. Michael Lake claims that during his contempt proceeding he was not informed of his right to counsel or his right to have appointed counsel if he could not afford counsel. Complaint ¶¶ 15, 16.

As to his present situation, Michael Lake alleges that he is indigent and remains in arrears on the support order existing for the benefit of the State of Connecticut. Plaintiff further alleges that due to his continued indigency and his remaining in arrears on the support order, plaintiff "is under constant threat of incarceration through the aforementioned contempt proceedings administered and enforced by the defendants." Complaint, ¶ 19. The complaint goes on to allege that it is the policy of the defendants to conduct such civil contempt proceedings without notifying the alleged contemnors of the right to counsel, or the right to appointed counsel if indigent, and that incarceration in these situations routinely results. Complaint, ¶¶ 20, 21. Finally, the plaintiff alleges that "the defendants Speziale and Sponzo have failed to alter" the procedure of which the plaintiff complains. Complaint, ¶¶ 22, 23, 24.

This Court held a hearing on the motion for preliminary injunction at which both Michael Lake and Mr. Zuraw, Michael Lake's Family Relations Officer, testified. The uncontested testimony revealed that the State of Connecticut filed an application of contempt against Michael Lake on or about June 24, 1982 for failure to remit payments due under the support order. Michael Lake failed to appear in state court for this contempt hearing and the court issued a capias on or about August 31, 1982. The State Police executed the capias on or about May 3, 1983. Michael Lake was then brought to Superior Court in Ansonia to face the civil contempt charge.

When in the courthouse on May 3, 1983, Michael Lake met with his Family Relations Officer, Mr. Zuraw. Both Michael Lake and Mr. Zuraw testified that they then had a discussion concerning how much money Michael Lake could pay that day on the arrearage on the support order. Michael Lake testified that he told Mr. Zuraw that he, Lake, could possibly pay $500.00 that afternoon after making a few phone calls. Mr. Zuraw testified to the same general effect, except that Mr. Zuraw stated that Michael Lake told him that he, Lake, could pay $600.00 rather than $500.00 by that afternoon.

After this discussion, Mr. Zuraw went into Judge Gaffney's chambers and discussed Michael Lake's case with Judge Gaffney. Mr. Zuraw testified that he informed Judge Gaffney that Michael Lake could pay $600.00 by three o'clock that afternoon. After further discussion with Judge Gaffney, Mr. Zuraw returned to Michael Lake to discuss again the situation. Mr. Zuraw testified that he then informed Michael Lake that Judge Gaffney would require Lake to pay $800.00 by three o'clock that afternoon to avoid being incarcerated on contempt. Mr. Zuraw testified that Michael Lake responded that he, Lake, could make this $800.00 payment by the appointed hour after making some phone calls.

Michael Lake was then presented to the court before Judge Gaffney. Mr. Zuraw testified that Judge Gaffney instructed Mi-

chael Lake that he would be required to pay $800.00 on the arrearage by three p.m. that day or face incarceration for contempt. Mr. Zuraw further testified that Michael Lake represented to the court that he could make the payment by the designated time, and that Judge Gaffney then ordered that Michael Lake make such a payment with the understanding that Lake be incarcerated until such time as he purged himself of the contempt. Mr. Zuraw stated while testifying that he was certain that Lake knew that incarceration would result if the payment was not made.

Michael Lake testified that he was indigent at the time of the contempt hearing before Judge Gaffney but that he told the court he could probably make the $800.00 payment after making a few phone calls. Michael Lake further testified that in his discussion with Mr. Zuraw, he, Lake, informed Mr. Zuraw that he was unemployed and was not collecting unemployment. Michael Lake's testimony was that he was laid-off from a job at a company called "Wiffle Ball" in November of 1982, but that he did receive unemployment compensation of $198.00 every two weeks until approximately April of 1983. In contrast, Mr. Zuraw testified that Michael Lake told him that he, Lake, had a part-time job at a restaurant called "Marino's." Mr. Zuraw further testified that at the contempt proceeding he informed the court that Mr. Lake was working part-time at Marino's and that Michael Lake did not contradict this assertion when Mr. Zuraw so informed the Judge during the contempt proceeding. Neither Mr. Zuraw nor Michael Lake contend that Judge Gaffney informed Lake of a right to counsel in the contempt proceeding, or of a right to appointed counsel if he could not afford counsel. ·

Subsequent to the hearing, the defendant submitted to the Court the transcript of the May 3, 1983 contempt proceedings in state court. Considering the brevity of the contempt proceeding, the Court sets forth the transcript in its entirety:

MR. ZURAW: Mr. Lake was picked up on a capias and is being presented for failure to appear in court on August 26, 1982. He was ordered to pay $15 a week on current support and $5 a week on arrearage on April 30, 1981. And, currently his total arrears are $5,471.84. He's in default of his payments in the amount of $1,401.82 to today.

I've spoken with Mr. Lake and he has indicated a possibility of being able to get $800 before 3:00 o'clock this afternoon. We would be agreeable to that.

THE COURT: $1,400 in default.

MR. ZURAW: Yes, your Honor.

THE COURT: And, nonappearance in August of last year. Are you going to be able to come up with that amount of money. (sic)

MR. LAKE: I'm going to try, sir. I've got to make phone calls. I'll try to get it by 3:00 o'clock.

THE COURT: All right. Do you want me to enter an order then?

MR. ZURAW: Yes. I would appreciate it if the Court could make a finding of the arrears at this time to be $5,471.84.

THE COURT: The Court will make a finding that there is an arrearage through May 3, 1983 in the total amount of $5,471.84. And, you want an order then, that requires Mr. Lake to make payments of an amount of $800 by 3:00 o'clock.

That order will enter, Mr. Lake. You are ordered and hereby ordered to make a payment in that amount in partial satisfaction of the obligation by 3:00 p.m. today. The amount is $800.

MR. ZURAW: The current order will remain in effect.

THE COURT: Current order is the same. Your payment is in reduction of the amount that you have been found in to be in default in.

MR. ZURAW: If he doesn't make it back by 3:00, might a mittimus be prepared?

THE COURT: Yes. Do you have any questions?

MR. LAKE: No.

\*　　\*　　\*　　\*　　\*　　\*

It is clear to this Court that at the May 3, 1983 contempt hearing, Michael Lake made no affirmative representation that he could pay $800.00 by that afternoon. When addressing the court that day, Mr. Zuraw stated that Michael Lake had "indicated a *possibility* of being able to obtain $800.00 before 3:00 this afternoon" (emphasis supplied). When Judge Gaffney asked Michael Lake whether he was "going to be able to come up with that amount of money," Michael Lake's response was no more certain: "I'm going to *try*, sir. I've got to make phone calls. I'll *try* to get it by 3:00 o'clock" (emphasis supplied). All of this, of course, was after Michael Lake, through Mr. Zuraw, was informed that Judge Gaffney would require $800.00 to be paid that day by three p.m. or Michael Lake would be incarcerated on contempt.

This Court sees no indication that Michael Lake represented to Judge Gaffney that he had the necessary money, or that he even believed that he *would* in fact be able to produce the same by the appointed hour. He merely suggested a willingness to attempt to get the money and a belief that the money could possibly be obtained. Michael Lake gave no intimation to the state court on whether the expected source of such money was his personal assets or the assets of some other party or parties. In addition, Judge Gaffney made no inquiry into Michael Lake's personal financial condition to determine his ability to pay the required amount of money. On the other hand, Michael Lake did not claim a complete inability to obtain the required sum. Further, the transcript reveals that nowhere on the record did Mr. Zuraw inform Judge Gaffney that Michael Lake was employed on a part-time basis at a restaurant. Accordingly, Michael Lake cannot be said to have failed to rebut such assertions. Finally, consistent with the testimony of both Mr. Zuraw and Michael Lake, the transcript of the proceeding shows that the topic of Michael Lake's right to counsel never arose in this brief hearing. Thus, it is clear that Michael Lake was not informed of a right to counsel in these proceedings or of a right to appointed counsel if he could not afford to retain counsel, and that no counsel was appointed to assist him in this matter.

Subsequent to the May 3, 1983, contempt hearing, Michael Lake was unable to obtain the $800.00 by the designated hour. In this regard, Michael Lake testified that in an effort to get the money together he called friends of his but was unable to get in touch with them. Consequently, the court incarcerated Michael on contempt. Michael Lake remained incarcerated for twenty four days until May 27, 1983, when he made a payment of $150.00. Michael Lake's uncontested testimony was that his parents were the source of this payment. Further, Michael Lake testified without contradiction that, during these twenty four days, no one from the court, the clerk's office or the family relations office contacted him to determine if he could pay the required sum.

As of June 30, 1983, the state court found that Michael Lake was in arrears in the amount of $5,301.84, on which the court ordered $7.00 weekly payments beginning on July 1, 1983. Plaintiff's uncontroverted testimony at the hearing before this Court on the motion for a preliminary injunction was that, as he is unemployed and without income, his parents are paying his current support obligations.

The Court notes that the testimony here revealed that on at least one prior occasion, in April of 1979, Michael Lake was before a state court judge for civil contempt for failure to pay child support. The court there ordered Lake to pay $500.00 or to be incarcerated until such time as he purged himself of the contempt. At that proceeding, the court did not inform Michael Lake of the right to counsel or the right to appointed counsel if he could not afford counsel. Also, the court did not appoint counsel to assist him in this proceeding. On the April 1979 contempt, Michael Lake spent one day in jail. He was released the next day on a payment of the $500.00. His parents furnished this $500.00 payment.

The Court also notes that at the hearing on the motion for a preliminary injunction, the parties submitted to the Court a stipulation regarding certain aspects of the practice of the Judges of the Superior Court of the State of Connecticut in civil contempt proceedings of this nature. The stipulation, as read into the record by attorney Michael Sheehan for the plaintiff, is as follows:

We have agreed with counsel for the defendants to stipulate on the record that Judges in the Superior Courts in Connecticut do not appoint counsel in civil contempt proceedings and that individuals are incarcerated. They do not make a finding of ability to afford counsel and they have no mechanism for appointing counsel in those cases.

This Court views this stipulation as establishing that the state court judges have a practice or policy of *not appointing* counsel in these proceedings. This stipulation does not specifically address the state court judges' practice with regard to *advising* or *not advising* alleged contemnors of a right to counsel and a right to appointed counsel in these proceedings. Nevertheless, this stipulation logically reflects a concomitant practice or policy of the state court judges *not to advise* alleged contemnors of a right to counsel and a right to appointed counsel in these matters.

The Court makes these points because of differences between portions of the plaintiff's pleadings and the substance of the stipulation. In addition, it seems preferable that the Court delineate the scope of the proposed preliminary injunction prior to addressing the motion for preliminary injunction itself, as well as the related issues which the parties have raised.

Consistent with references in the complaint,[1] and as previously noted, *see supra,* page 1220, the plaintiff, in his motion for a preliminary injunction, seeks an injunction "requiring that the defendant class *advise* all members of the plaintiff class of their right to counsel, and their right to court[-]appointed counsel if found to be indigent, in civil contempt proceedings in child support matters." Motion For Preliminary Injunction, at 1 (emphasis supplied). However, plaintiff's motion for preliminary relief does not refer to the right to counsel and the right to court-appointed counsel in these proceedings as distinguished from the right to be *advised* of these rights. Thus, by its terms, the *motion* does not seek a preliminary injunction requiring the state court judges to *appoint* counsel for those alleged contemnors found to be indigent.

Nevertheless, the plaintiff does allege in his complaint that these civil contempt proceedings "are routinely conducted ... without *provision* of court[-]appointed counsel to assist the indigent," and that this "policy is administered and enforced" by the defendants. Complaint, ¶ 20. Moreover, although the motion for preliminary injunction is silent in this respect, the plaintiff, in the prayer for relief in the complaint, asks that this Court "[g]rant preliminary and

---

1. The plaintiff's complaint, in the statement of facts, alleges that at the civil contempt proceeding in May of 1983, he was not "*aware* of his right to counsel or of his right to court[-]appointed counsel because of his indigency," Complaint, Paragraph 15, and that he was not "*informed* of his right to be represented by counsel and his right to court-appointed counsel if unable to afford [the] same." Complaint, Paragraph 16 (emphasis supplied). The complaint goes on to allege that the defendants have not "instituted a procedure whereby plaintiffs were *advised* of their right to counsel or their right to court[-]appointed counsel if found to be indigent in such contempt proceedings," Complaint, Paragraph 22, and that defendants have not "instructed the Judges of the Superior Court to *inform* plaintiffs of this right to counsel and their right to court[-]appointed counsel if found to be indigent." Complaint, Paragraph 23 (emphasis supplied). The complaint further alleges that the defendants have failed to alter the procedure whereby alleged contemnors are not "*instructed* of the right to counsel and the right to court[-]appointed counsel," Complaint, Paragraph 24, and the defendants' actions "in administering and enforcing the State policy of refusing to *advise* indigent" alleged contemnors of these rights, Complaint, Paragraph 25 (emphasis supplied), violate the plaintiff's rights under the Sixth and Fourteenth Amendments, *id.,* and under the Due Process Clause of the Fourteenth Amendment, Complaint, Paragraph 26.

permanent injunctive relief requiring defendants ... to *inform* members of the plaintiff class of their right to counsel ... and to *provide* court-appointed counsel to any member of the plaintiff class found to be indigent in such contempt proceeding." Complaint, at 9, No. 2 (emphasis supplied).

This Court views the right to be *advised* or *informed* of the right to counsel and to appointed counsel in a proceeding, as a right distinct from, albeit necessarily related to, the right to counsel and to appointed counsel in that proceeding. It is not entirely clear to this Court that this is always a distinction without a difference. Nevertheless, despite the motion's omission, it appears to this Court that the right to court-appointed counsel if found to be indigent in these proceedings is part of this requested preliminary injunction. This is because the Court finds that the parties have litigated the motion on the two theories found in the complaint's prayer for relief: that the plaintiff in a civil contempt proceeding facing potential incarceration for nonpayment under a support order (1) has the right to be *advised* of the right to counsel and the right to appointed counsel in these proceedings if found to be indigent and (2) has the right to counsel and the right to appointed counsel in these proceedings if found to be indigent.[2] To the extent, if any, that the

**2.** The plaintiff's memoranda to the Court make clear that plaintiff views the right to court-appointed counsel as within the purview of the requested injunction. Plaintiff argues that he and members of the putative plaintiff class will be threatened with irreparable harm absent the preliminary injunction because they "will be brought before state judges who will not advise them of their right to counsel and will fail to *provide* counsel for those who are indigent. They will be threatened with imprisonment and, in many cases, imprisoned—without having had the *assistance* of counsel." Brief In Support Of Preliminary Injunction, at 3–4. Plaintiff goes on to cite to the Court decisions dealing with the right to court-appointed counsel rather than with the right to be *advised* of that right. *Id.* at 4–5. Also, in arguing that abstention is not proper, the plaintiff declares that in this case, he "challenges *one* [practice]—the acknowledged failure of the state court judges to *appoint* counsel for indigents in non-support contempt proceedings." *Id.* at 10 (first emphasis in original; second emphasis supplied). Plaintiff states that he "asks only that state court judges be required to do what they *already* do routinely in criminal cases—*appoint* counsel for indigents." *Id.* (first emphasis in original; second emphasis supplied). Continuing on this issue, the plaintiff asserts that "[s]ince the present action focuses only upon the practice of refusing to *provide* indigents with counsel," abstention is not required. *Id.* at 11. In a supplemental memorandum, the plaintiff characterizes "the defendants' action in failing to advise plaintiffs of their right to counsel and *failure to appoint counsel* for indigent non-support" alleged contemnors as a "state policy." Plaintiffs' Supplemental Memorandum In Support Of Preliminary Injunction, at 6 (emphasis supplied). The plaintiff goes on to note the "continued policy of the state judiciary to *fail to appoint counsel* for indigent[s]" in such proceedings. *Id.* (emphasis supplied). Furthermore, while arguing that class certification is appropriate, the plaintiff declares that

"[i]n the present case, the only interest being asserted is the *right to counsel* in non-support contempt proceedings where incarceration may result." *Id.* at 9 (emphasis supplied). In this connection, the plaintiff further posits that "[a]s with all other class members, he will be denied *appointed counsel* at those proceedings and may be incarcerated thereafter." *Id.* at 10–11 (emphasis supplied).

The defendants likewise have proceeded in this case as if the proposed preliminary injunction includes directing the Superior Court Judges to appoint counsel for indigent alleged contemnors. First, as previously noted, the stipulation in this matter goes to the failure of the judges to *appoint* counsel and not directly to the failure to advise members of the putative plaintiff class of their rights to counsel. Second, the defendants' memoranda, like those of the plaintiff, are replete with statements indicating defendants' belief that the proposed injunction involves appointment of counsel.

In opposing the motion at issue, the defendants acknowledge that "[t]he plaintiff ... alleges that he is entitled to be *advised* of his right to counsel in ... [such] contempt proceeding[s] ... *and* that the Court is *bound to appoint* an attorney on his behalf should he be found indigent." Defendants' Memorandum In Opposition To Motion For Preliminary Injunction, at 1; *see* Defendants' Memorandum In Support Of Their Motion To Dismiss. In the heading of one section of the memorandum, the defendants declare that "THERE IS NO DUE PROCESS VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS IF THE PLAINTIFF IS NOT *ADVISED* BY [THE] COURT OF HIS RIGHT TO COUNSEL NOR HAS AN ATTORNEY *APPOINTED* ON HIS BEHALF IF HE WAS INDIGENT." Defendants' Memorandum In Opposition To Motion For Preliminary Injunction, at 3 (emphasis supplied). Defendants continue in that section to recognize that the plaintiff "contends that he is indigent and the threat of imprison-

right to court-appointed counsel as part of the proposed preliminary relief is not properly pleaded, this problem is cured by the parties having actually litigated this issue. Rule 15(b), Fed.R.Civ.P. Therefore, this Court will consider the issues in this case in the context of a proposed preliminary injunction, which will require that the state court judges *both* advise members of the putative plaintiff class of the right to counsel and the right to appointed counsel, *and* provide to such members court-appointed counsel if found to be indigent.

## I. STANDING

The first question in this matter to which the Court directs its attention is whether Michael Lake has sufficiently alleged a case or controversy so as to confer upon himself standing to seek the requested injunctive relief. With respect to the injunctive relief sought, the most recent in the line of Supreme Court cases against which Michael Lake's situation must be measured is *City of Los Angeles v. Lyons*, —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

In *Lyons*, the plaintiff alleged that he had been subjected to a "choke-hold" or "stranglehold" by an officer of the Los Angeles Police Department, (LAPD), after being stopped for a traffic violation. *Lyons*, —— U.S. at ——, 103 S.Ct. 1663. Lyons further alleged that he offered no resistance to the police officer and that the officer applied the "chokehold" without provocation or justification. *Id.* at ——, 103 S.Ct. at 1663. In one count of his complaint, Lyons sought injunctive relief against the City of Los Angeles to prevent the officers of the LAPD from using "chokeholds" except where the victim of

the "chokehold" reasonably appeared to be threatening the immediate use of deadly force. *Id.* at ——, 103 S.Ct. at 1663. In his complaint, Lyons alleged that officers in the LAPD routinely applied these "chokeholds" in countless situations in which its use was not warranted, that numerous individuals had been injured as a result, and that during any future contact he might have with the police, he might be subjected to the "chokehold." *Id.* at ——, 103 S.Ct. 1663.

The Court in *Lyons* held that the plaintiff had "failed to demonstrate a case or controversy with the City that would justify the equitable relief sought." —— U.S. ——, ——, 103 S.Ct. 1660, 1667 (1983). The Court found that Lyons did not allege facts which made it sufficiently likely that he would again be subjected to an allegedly unlawful "chokehold" by a LAPD officer. The *Lyons* Court felt that, even if the plaintiff had been unlawfully choked, the additional allegation that the LAPD officers "routinely" applied the chokehold in unwarranted situations fell "far short of the allegations that would be necessary to establish a case or controversy between these parties." *Id.* at ——, 103 S.Ct. at 1667. In this regard, the *Lyons* Court noted that he would have had to allege that he would have another encounter with the police, coupled with the "incredible assertion" that either *"all* police officers ... *always* choke any citizen with whom they happen to have an encounter, ... or that the City ordered or authorized police officers to act in such a manner." *Id.* at ——, 103 S.Ct. at 1667 (emphasis in original). While noting that Lyons had alleged that the City of Los Angeles had authorized the

---

ment should require that *counsel be appointed* for him to insure a fundamentally fair hearing." *Id.* at 4 (emphasis supplied). *See also Id.* at 6. Although arguing against the position of the plaintiff and the putative plaintiff class, the defendants state that "the plaintiffs contend that they may be deprived of their physical liberty by current Connecticut contempt procedures thereby implicating the Fourteenth Amendment and *requiring court-appointed counsel." Id.* at 7 (emphasis supplied). Moreover, defendants note that the plaintiff is claiming that "the lack of *court-appointed counsel* in civil contempt pro-

ceedings deprives him of a meaningful opportunity to be heard." *Id.* at 8 (emphasis supplied). In stressing the potential financial burden to the state, the defendants acknowledge that "should the [C]ourt grant plaintiff's Motion For Preliminary Injunction, the judiciary of Connecticut would be *required to appoint attorneys* for ... indigent [alleged contemnors] in contempt proceedings." *Id.* at 11 (emphasis supplied). *See also* Defendants Memorandum in Support Of Their Motion To Dismiss, at 3; Brief In Reply To Plaintiffs' Brief In Support Of Preliminary Injunction, at 6.

use of the "chokehold" in "situations where deadly force was not threatened," the Court found these allegations insufficient to establish the plaintiff's standing. The *Lyons* Court set forth the complaint's error of omission as follows:

"[the complaint] did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City's policy. If, for example, chokeholds were authorized to be used only to counter resistance to an arrest by a suspect, or to thwart an effort to escape, any future threat to Lyons from the City's policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or the officers would disobey their instructions and again render him unconscious without any provocation."

*Id.* at ——, 103 S.Ct. at 1667.

Essentially for the reasons just noted, the Court in *Lyons* held that the plaintiff's allegations were insufficient to provide him with standing and thus the Court was without jurisdiction to entertain his complaint for injunctive relief.

■ Based on the allegations and facts of this case, the Court believes that Michael Lake satisfies the standing requirements set forth in *Lyons* and, accordingly, has established a case or controversy sufficient to give this Court jurisdiction over the claim for injunctive relief. *See Parker v. Turner*, 626 F.2d 1, 5 n. 9 (6th Cir.1980) (discussing standing in the context of *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Court stated that "the plaintiffs' specific allegations of poverty and past jailing for non-support are sufficient to create an actual case or controversy").

First, the Court notes that past alleged wrongs are evidence going to the issue of whether there is a real or immediate threat of the reoccurrence of the alleged wrong. *See O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974); *City of Los Angeles v. Lyons*, —— U.S. ——, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (citing *O'Shea v. Littleton, supra.*); *Parker v. Turner*, 626 F.2d 1, 5 n. 9 (6th Cir.1980). In the instant case, the plaintiff was incarcerated for civil contempt in May of 1983 for a period of twenty four days, allegedly in violation of his constitutional rights to counsel. In addition, Michael Lake was incarcerated in April of 1979, for a single day, again for civil contempt and again without being informed of a right to counsel or a right to appointed counsel if he was unable to afford to retain counsel, and again without having the assistance of court-appointed counsel.

Second, while Michael Lake purged himself of the contempt by having his parents pay $150.00, he still is in arrears on his support order. In addition, his testimony at the hearing before this Court establishes that his economic situation is bleak. In essence, Michael Lake's testimony demonstrates that he is indigent and that he is unemployed and not collecting any unemployment compensation. There is no indication that Michael Lake's financial condition is about to improve. Moreover, Michael Lake's testimony established that his current support obligations are being paid by his parents, who have no legal obligation to continue making such payments. The Court believes that based upon all of the circumstances, Michael Lake faces a very real threat of being brought before a state court judge for civil contempt in the future. Certainly, it is far more likely that Michael Lake will again be subjected to contempt proceedings in state court for failure to make the appropriate support payments, than it was for the plaintiff in *Lyons* to have a subsequent encounter with an officer of the LAPD. In the case at bar, the plaintiff alleges and the facts support a finding of the realistic likelihood of a future contempt proceeding. *See Juidice v. Vail*, 430 U.S. 327 at 333 n. 9, 97 S.Ct. 1211, 1216 n. 9, 51 L.Ed.2d 376; *Parker v. Turner*, 626 F.2d 1, 5 n. 9 (6th Cir.1980). Further, the Court notes that the likelihood of Michael Lake again being in a civil con-

tempt proceeding for failure to make payments does not depend on Michael Lake willfully breaking the law. *See generally Lyons v. City of Los Angeles,* —— U.S. at ——, 103 S.Ct. at 1667, 1669 n. 9, 75 L.Ed.2d 675 (1983). Michael Lake's present financial condition creates the likelihood of this occuring in the future without any deliberate act of malfeasance on his part.

Third, the defendants in the instant case have stipulated that it is the policy of the Judges of the Superior Court not to advise alleged child support contemnors of their right to counsel or their right to court-appointed counsel if they are found to be indigent, and not to appoint counsel for indigent persons in such civil contempt proceedings. Thus, it is highly likely that, were Michael Lake again to appear before the court in a civil contempt hearing in a Connecticut Superior Court based on the child support order, the judge would follow the policy of the court and not advise him of the right to counsel in the proceeding, or the right to court appointed counsel if he could not afford counsel, and would not appoint counsel if he is found to be indigent. This is very different from the circumstances in *Lyons* where the likelihood of the event recurring depended in part on police officers *not conforming* to the City's policy on chokeholds. In this case it is the *conformance* with the policy that brings about the alleged injury and this Court considers the probability of such conformance to be very high. Thus, unlike in *Lyons,* there is in the instant case no "incredible assertion" which Michael Lake must make to adequately demonstrate his standing. *See Lyons v. City of Los Angeles,* —— U.S. at ——, 103 S.Ct. at 1667.

In sum, the Court finds that Michael Lake has the requisite standing to seek the proposed injunctive relief against these defendants and, thus, this Court has jurisdiction over the claim. *See Parker v. Turner,* 626 F.2d at 5, n. 9. As the Court of Appeals for the Second Circuit recently noted, "the critical standing inquiry is whether a plaintiff is 'realistically threatened by a repetition of his experience ....' or whether the claim is 'speculative.'" *Curtis v.*

*City of New Haven,* 726 F.2d 65 at 67, (2d Cir.1984) (citing *Lyons v. City of Los Angeles,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Based on the circumstances discussed above, this Court is of the opinion that the plaintiff's claim in the instant case is not "speculative." Instead, the Court believes that the plaintiff has demonstrated that he is realistically threatened by a repetition of his experiences.

## II. ABSTENTION

The defendants in this matter argue that abstention is required under the equitable restraint doctrine as enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. On this basis, the defendants move for dismissal under Rule 12(b), Fed.R.Civ.P. The plaintiff argues that abstention is not appropriate in this case principally because there is no pending state civil contempt proceeding involving the plaintiff which would mandate *Younger* abstention.

The Supreme Court in *Younger v. Harris* held that principles of equity, comity and federalism prevent federal courts from enjoining pending state criminal proceedings. Subsequently, the Supreme Court expanded the doctrine of *Younger* to areas beyond that of pending state criminal proceedings. In these cases, however, the Supreme Court dealt with situations where federal courts were to enjoin other pending state proceedings. *See, e.g., Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (pending state court nuisance proceeding); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (pending state court prejudgment attachment proceeding); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (pending state civil contempt proceeding against judgment debtors); *see also Henkel v. Bradshaw,* 483 F.2d 1386 (9th Cir.1973) (pending state civil contempt proceeding relating to child support order). In contrast, in cases where there was no pending state action at the

time the federal suit was filed, the Supreme Court has declared that "the relevant principles of equity, comity and federalism 'have little force' in the absence of a pending state proceeding.' *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972)." *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). *See also, Wooley v. Maynard,* 430 U.S. 705, 709–10, 97 S.Ct. 1428, 1432–33, 51 L.Ed.2d 752 (1977).

■ The defendants rely primarily on the *Younger* doctrine as it was extended in *Judice v. Vail, supra,* in the situation of civil contempt proceedings involving judgment debtors. The Court in *Vail* dealt with a number of plaintiffs, some of whom the Court found lacked standing to seek the injunctive relief requested because "the complaint did not allege and ... the District Court did not find that these appellees were threatened with further or repeated proceedings." *Juidice v. Vail,* 430 U.S. at 333, 97 S.Ct. at 1216. As noted above, this Court finds that Michael Lake in the instant case has made sufficient allegations and has established adequate facts to demonstrate a realistic threat of the reoccurrence of the alleged wrong so as to confer upon him standing to seek the requested relief. As to the two plaintiffs in *Vail* whom the Court found had standing, the

Court stated that "since their standing, unlike that of the plaintiff in *Steffel v. Thompson, supra,* is predicated on the existence of a pending, and not merely threatened, proceeding, we deal with appellants' *Younger* contentions." *Id.* Thus, in *Vail,* it was the crucial element of the plaintiffs' standing being based on a *pending proceeding* that allowed the Court to reach the *Younger* issues. The clear import of the Court's above-quoted statement in *Vail* is that, had the plaintiffs' standing been predicated on merely the existence of a *threatened proceeding,* the Court would not reach the *Younger* issues which could require abstention. The theory of *Vail* is that *Younger* abstention simply is not appropriate when plaintiff's action in federal court is not directed against a pending state action. This latter situation is precisely that which is currently before the Court.[3]

This Court notes that federal injunctive relief to restrain future state criminal proceedings when there are no pending state prosecutions has been approved over the defendant's request for abstention under *Younger* in *Wooley v. Maynard,* 430 U.S. 705, 709–10, 97 S.Ct. 1428, 1432–33, 51 L.Ed.2d 752 (1974). Here, as in *Wooley,* the "suit is in no way 'designed to annul the results of a state trial' since the relief

**3.** Assuming, *arguendo,* that the defendants' *Younger* contentions could be reached, the circumstances in the case before this Court are very different from those which confronted the Court in *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). The Court in *Juidice v. Vail* held that the federal district court should have abstained under *Younger* where the plaintiffs, whose standing was predicated on the existence of a *pending* state contempt proceeding, could have themselves, or through their attorneys, presented their federal defenses in the contempt proceeding in state court, but, "instead, chose to ignore the pending state-court proceeding by filing this suit in federal court." 430 U.S. at 338 n. 15, 97 S.Ct. at 1218 n. 15. In contrast, in the case at bar, the plaintiff was not aware of his right to counsel and, therefore, could not realistically have raised this right to counsel in the state contempt proceeding. Furthermore, the plaintiff did not contact an attorney in connection with the contempt proceeding or his incarceration for contempt until one day

after the time for appeal had run. *See* Plaintiffs' Supplemental Memorandum In Support of Preliminary Injunction, at 12–14. Thus, plaintiff was not aware of the federal rights he raises in the case before this Court, nor did he have an attorney to inform him of his claim to these rights and to assist him in asserting such rights, until well after the contempt hearing and after the appeal period had expired. With the appeal period having run, the plaintiff turned to instituting this action based on 42 U.S.C. Section 1983. While the plaintiff could have brought this Section 1983 suit in state court, there is no requirement that he have done so. A plaintiff in a Section 1983 suit brought in federal court is not required to exhaust state judicial remedies by first bringing that same Section 1983 suit in state court. *Moorish Science Temple of America, Inc. v. Smith,* 693 F.2d 987, 989 (2d Cir. 1982); *Meyer v. Frank,* 550 F.2d 726, 729 (2d Cir.), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977); *Snyder v. Altman,* 444 F.Supp. 1269, 1270 (N.D.Cal.1978).

sought is wholly prospective." *Id.* at 711, 97 S.Ct. at 1433. The defendants, however, cite *Parker v. Turner,* 626 F.2d 1 (6th Cir.1980), to distinguish the instant case from *Wooley.*

In *Parker,* the Court felt that *Wooley* was applicable and abstention was not required where a plaintiff was alleging the unconstitutionality of a state statute, but that *Wooley* did not apply and abstention was required when plaintiffs, as they had in *Parker,* allege a *pattern* of unconstitutional practices in state civil contempt proceedings. 626 F.2d at 6. The *Parker* Court felt that the plaintiffs there had run afoul of the Supreme Court's decision in *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), which requires abstention where the injunction sought would "require ongoing federal supervision of how the state judges acted" in various proceedings, even if there is no pending state proceeding within the meaning of *Younger. Id.* at 7. It was the breadth of the relief that the plaintiffs sought in *Parker,* based on a *pattern* of unconstitutional practices, which the Court felt would require such supervision.

This Court does not view this case as one in which the injunction, if granted, would require an "ongoing audit of state ... proceedings." *O'Shea v. Littleton, supra.* The injunction sought in this case would not effect the *conduct* of the state contempt proceedings as such, which appears to be the major concern of the Court in

*Parker. See Parker v. Turner,* 626 F.2d at 7. The injunction seeks only to have the state judges initially inform the alleged contemnor in these civil contempt proceedings of the right to counsel and of the right to appointed counsel if found to be indigent in the proceeding, and to have the judges appoint counsel for such indigent persons. *See Cobb v. Green,* 574 F.Supp. 256 (W.D. Mich.1983) (enjoining state court judge on limited issue of right to counsel). This proposed injunction affects only the practice of the state judges not to so advise and appoint which, in this litigation, is admitted to be a policy of the Connecticut Superior Court.[4]

Defendants argue that the recent decision in *Mastin v. Fellerhoff,* 526 F.Supp. 969 (S.D.Ohio 1981), where the district court did not abstain under *Younger* principles, demonstrates why this Court should abstain under those principles. In its discussion of abstention, the Court in *Mastin* noted that the Ohio Supreme Court had previously decided the issue adversely to the federal plaintiffs' position, and therefore "extraordinary circumstances" existed to prevent abstention under *Younger* in the federal injunctive case. *Mastin,* 526 F.Supp. at 971. The defendants argue that no such circumstances exist in this case and therefore abstention is mandated.

While the *Mastin* Court certainly reached those issues, it did so only after relying on *O'Shea v. Littleton, supra,* and

---

**4.** The instant case is distinguishable from *Bedrosian v. Mintz,* 518 F.2d 396 (2d Cir.1975), in which the Court found abstention was proper under *Younger* and *O'Shea v. Littleton* when the state conduct to be subjected to the proposed injunction was the method, and not the fact, of assigning counsel. First, the *Bedrosian* Court was presented with a proposed injunction relating to a *pending* criminal proceeding. Second, the Court in *Bedrosian* noted the "discretionary nature of the act which appellants seek to enjoin," in deciding that abstention was appropriate. 518 F.2d at 399. The basis of the plaintiffs' action in *Bedrosian* was that the judge presiding over the state criminal proceedings was employing unconstitutional discrimination in making the choice of whom to assign as counsel. *Id.* at 398. In contrast, here in the instant matter, the substance of the action challenges a policy of

the Superior Court Judges, involving no discretionary judgments, which is to be applied in future civil proceedings. Indeed, an important fact to be noted is the complete lack of discretion in the nature of the acts which form the basis of the proposed injunction. *See Kaplan v. Hess,* 694 F.2d 847, 851 & 850 n. 3 (D.C.Cir.1982) (distinguishing case from *O'Shea v. Littleton* in declaratory judgment action, while noting in footnote 3 that case may be unchanged if injunction had been sought). As distinguished from the manner of assignment issues that were raised in *Bedrosian,* the right to counsel issues raised in the case at bar are peripheral to the conduct of the future civil contempt proceedings. Any implication to the contrary that can be drawn from *Bedrosian* is *dicta.* The same can be said of any like implication in *Wallace v. Kern,* 520 F.2d 400, 405 n. 10 (2d Cir.1975).

*Parker v. Turner, supra,* for the proposition that abstention under *Younger* is proper even where there is no pending state proceeding. Although this rule emanates from what is arguably *dicta* in *O'Shea v. Littleton,* it was there limited to instances where the resulting injunction would require extensive and substantial federal supervision over the functioning of the state judiciary. 414 U.S. at 499–500, 94 S.Ct. at 677–78. The Court has already noted that the instant case is not such a case. In *Parker,* the relief sought was sufficiently broad in that Court's view for it to determine that the proposed injunction there came within the rule of *O'Shea v. Littleton.* 626 F.2d at 8. The *Mastin* Court, however, faced with essentially the same issue that is currently before this Court, although in the context of a permanent rather than preliminary injunction, felt that the rule of *O'Shea v. Littleton* and *Parker v. Turner* applied. 526 F.Supp. at 970–71. Notwithstanding this position, the Court in *Mastin* held that circumstances before it were "extraordinary" and therefore did not mandate abstention. *Id.* at 971. Nonetheless, to the extent that the *Mastin* decision implies an extention of *Younger* beyond the decisions of *O'Shea v. Littleton* and *Parker v. Turner* to situations where there is no pending state proceeding and there is no substantial federal supervisory problem, this Court rejects that implication. Thus, this Court need not address whether this is an "extraordinary circumstances" exception to the rules of *Younger* or *O'Shea v. Littleton,* as neither of these decisions as applied to this case require abstention. As noted above, this case does not deal with a pending state proceeding and the proposed injunction does not involve substantial federal supervision over the state judiciary.

Defendants further direct the Court's attention to *Cobb v. Green,* 574 F.Supp. 256 (W.D.Mich.1983), where the district court did not abstain because the Michigan State Supreme Court had decided the same issue against the federal plaintiffs' position. While it is true that the Court in *Cobb* partially based its decision not to abstain on the fact that the state court had so ruled, the *Cobb* case, like the *Mastin* case just noted, is distinguishable from the case at bar. In *Cobb,* there was a pending state contempt proceeding involving the plaintiff which the district court had halted by issuing a temporary restraining order pending the district court's decision on the preliminary injunction. Thus, in *Cobb,* there was a pending state proceeding making the *Younger* doctrine as extended in *Juidice v. Vail* applicable to that case in which the plaintiff's standing was predicated on that pending proceeding. *Juidice v. Vail,* 430 U.S. 327, 333, 97 S.Ct. 1211, 1216, 51 L.Ed.2d 376 (1974). Again, there is no pending state proceeding in the case at bar to invoke *Younger* abstention: thus, there is no reason to address whether, and in what way, the Connecticut Supreme Court has decided the issue in order to determine whether this case should be an exception to the abstention rule of *Younger* and *Juidice v. Vail.*

Moreover, this case does not involve an attempt to declare unconstitutional, and enjoin the enforcement of, state statutes which authorize a state court to punish a person for contempt, as was the case in *Bieluch v. Freeman,* Civ. No. B–82–426 (D.Conn.1983) and *Bieluch v. Jacobson,* B–82–707 (D.Conn.1983). Instead, the proposed injunction leaves intact the authority of the Connecticut State Courts to punish persons for contempt. This important state interest relating to the administration of the state's judicial system is thus protected even if the injunction is to be granted. The change envisioned by the proposed injunction is only that the judge advise the alleged contemnor of the rights to counsel noted above and appoint counsel if an indigent alleged contemnor desires. This does not in any way impinge on the state's interest to conduct such contempt proceedings. What plaintiff attacks in this suit is the narrow admitted policy of the Superior Court Judges which is ancillary to the contempt proceeding itself. *See generally*

1332

*Gerstein v. Pugh,* 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9; 43 L.Ed.2d 54 (1975).[5]

■ Based on the foregoing, and principally on the strength of *Juidice v. Vail, supra,* and *Wooley v. Maynard, supra,* the Court finds that abstention under *Younger v. Harris* and its progeny is not appropriate on the proposed preliminary injunctive relief in this case.[6] *Younger v. Harris* and its progeny. Accordingly, the defendants' motion to dismiss is DENIED.

## III. CLASS CERTIFICATION

Plaintiff moves pursuant to Rule 23(c)(1), as the putative class representative, for class certification under Rule 23(a), 23(b)(1)(B), and 23(b)(2), of a class consisting of "all residents of the State of Connecticut who: (1) have been or currently are under support orders for the benefit of the State of Connecticut; (2) are indigent and are unable to procure counsel to represent them at civil contempt proceedings and; (3) are or may in the future be in arrears under these support orders and are thus under a constant threat of incarceration." Complaint, Paragraph 7; *see also* Motion for Class Certification, at 2. Michael Lake asserts that the requirements of Rule 23 are satisfied and that the class should be certified. The defendants claim that class certification should be denied

because: "(A) he does not meet the requirement of typicality of claims and (B) . . . the plaintiff's claims are now moot." Defendants' Memorandum of Law on Plaintiff's Motion for Preliminary Injunction and on Plaintiff's Motion for Class Certification, at 9.

■ Addressing the defendants' latter contention first, the Court finds that the plaintiff's claims are not moot. The relief that Michael Lake seeks is wholly prospective and does not become moot by his release from incarceration. This Court has held that the plaintiff has a *present and live* case or controversy which results from the realistic likelihood of again facing such contempt proceedings, brought about by his being in arrears under a support order, his indigency, the State Court Judges' policy regarding a right to counsel in these contempt proceedings, and his prior contempt proceedings insofar as they relate to the likelihood of reoccurrence. As the plaintiff states, "the class is defined to include only those individuals *threatened* with incarceration, not those currently in jail." Plaintiff's Supplemental Memorandum in Support of Preliminary Injunction, at 12 (emphasis in original). Thus, actual present incarceration is not a part of Michael Lake's claim and his being released

---

5. *See* footnote 4, *supra.*

6. The parties have informed the Court of a habeas corpus proceeding, filed on December 21, 1983, currently pending before the Honorable Robert Berdon of the Connecticut Superior Court. In this Court's view, this circumstance does not warrant abstention under the doctrine of *Younger* and *Juidice v. Vail.* First, any ruling of this Court on the motion for a preliminary injunction would not be a ruling on the merits of the case before this Court and would be wholly prospective. Thus, such a ruling would have no direct affect on the case now pending before Judge Berdon. Hence, there is no element of interference with this habeas corpus proceeding, which is a central concern of the *Younger* doctrine. *See Hicks v. Miranda,* 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975). Second, it appears that the action now before Judge Berdon is not a "pending suit" within the meaning of that term as it is typically used in the *Younger* context. A proceeding is generally considered "pending" in this context if it is a state proceeding ongoing at the time the

federal suit is filed. *See, e.g., Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971); *Samuels v. Mackell,* 401 U.S. 66, 73–74, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971); *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974); *Kaplan v. Hess,* 694 F.2d 847, 851 (D.C.Cir.1982). The extention of this definition in *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975), is not applicable to the case at bar. Third, a decision by Judge Berdon on the petition for writ of habeas corpus may not reach the issues relating to the right to counsel in these civil contempt proceedings as there are other separate grounds upon which Judge Berdon could rule. Finally, it is not clear to this Court that even if Judge Berdon were to rule on the merits of the issue of right to counsel in such contempt proceedings, that this decision would be binding on other Superior Court Judges, absent a ruling from an appellate Court of the State of Connecticut.

from incarceration does nothing to make moot his claim in this lawsuit.

█ Defendants next argue that Michael Lake cannot comply with the section of Rule 23 that requires "that there are questions of law and fact common to the class," and that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(2) & (a)(3). This Court does not agree. Plaintiff's claim in this action is quite simple. Plaintiff claims that as a presently indigent person in arrears under such a support order, he faces a realistic likelihood of being subjected to future civil contempt proceedings in which he faces potential incarceration and in which he will not be advised of a right to counsel or of a right to appointed counsel if he is unable to afford counsel, and in which counsel will not be appointed to assist him. The specific circumstances of how Michael Lake came to be indigent are generally irrelevant to the issue of whether he should or should not be advised of a right to counsel and a right to appointed counsel, and whether or not he should receive the assistance of appointed counsel. This Court perceives no commonality problem with respect to relevant questions of law and fact as the claim of each similarly situated person is essentially identical, *i.e.*, that he or she is entitled to appointed counsel if incarceration is a potential result of the civil contempt proceeding. *See, e.g., Leist v. Shawano County*, 91 F.R.D. 64, 67 (E.D.Wis.1981); *Holland v. Steele*, 92 F.R.D. 58, 63 (N.D. Ga.1981); *Penk v. Oregon State Bd. of Higher Educ.*, 93 F.R.D. 45, 49–50 (D.Or. 1981); *Dura-bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93–94 (S.D.N.Y. 1981); *Anderson v. Rizzo*, 80 F.R.D. 72, 75–76 (E.D.Pa.1978). Similarly, there appears to the Court to be no typicality problem with regard to the claims or defenses of the members of the putative plaintiff class. *See generally Coca-Cola Bottling Co. v. Coca-Cola Co.*, 98 F.R.D. 254, 265–66 (D.Del.1983) (discussing typicality requirement); *Arthur v. Starrett City Assoc.*, 98 F.R.D. 500, 506 (E.D.N.Y.1983) (same).

Furthermore, the Court finds that the members of the class are so numerous that joinder is impracticable. *See* Affidavit of John Keegan. The Court also believes that the plaintiff's attorneys, Michael Sheehan of New Haven Legal Assistance Association, Inc., and Patricia Kaplan of Valley Legal Assistance, are well qualified to conduct this litigation. The defendants have made no allegations to the contrary. Moreover, this Court is fully satisfied that this case is not the product of collusion and that Michael Lake, as the class representative, does not have interests antagonistic to those of the putative class. Hence, the Court finds that Michael Lake, as the representative plaintiff, will adequately protect the interests of the class. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562–63 (2d Cir.1968), *rev'd on other grds.*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Again, the defendants have made no allegations to the contrary. Therefore, the Court finds the prerequisites to maintaining a class action under Rule 23(a) are satisfied in the case at bar.

While plaintiff has asserted that this is a proper class action under both Rule 23(b)(1)(B) and Rule 23(b)(2), the Court addresses only the latter contention as it finds that the circumstances of the instant case satisfy the requirements of Rule 23(b)(2). Accordingly, the plaintiff's proposed class action is maintainable under Rule 23. The defendants in the instant case have admitted to a policy of not informing the plaintiff and those similarly situated of a right to counsel and appointed counsel in such civil contempt proceedings, and of not appointing counsel when indigency is found. Hence, the Superior Court Judges act in a uniform manner with respect to the issues plaintiff raises. This situation "thereby mak[es] appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2). *See, e.g., Lewis v. Tully*, 96 F.R.D. 370, 378 (N.D.Ill.1982); *Leist v. Shawano County*, 91 F.R.D. 64, 68 (E.D.Wis.1981).

Based on the foregoing, the plaintiff's motion, insofar as it seeks to certify the class described above, is GRANTED.

■ Plaintiff's motion for class certification also seeks to have the Court certify a defendant class consisting of all Superior Court Judges of the State of Connecticut. To date, the named defendants in this action have not opposed this portion of plaintiff's motion for class certification. For many of the reasons just discussed, and based on all of the circumstances of the case, the Court is of the opinion that plaintiff's motion to certify a defendant class of Connecticut Superior Court Judges should be granted. The class of defendants is sufficiently numerous to make joinder impracticable, there are questions of law and fact common to the class, the claims or defenses of the representative defendant are typical of those of the class members, and the Court has no reason to doubt that the defendants will fairly and adequately protect the interests of the class. *See, e.g., Coleman v. McLaren*, 98 F.R.D. 638, 650–51 (N.D.Ill.1983) (discussing application of Rule 23(a) to certification of defendant class of state judges); *Leist v. Shawano County*, 91 F.R.D. 64, 68–69 (E.D.Wis. 1981) (discussing application of Rule 23(a) to certification of defendant class).[7] Further, as noted, the named defendants in this case have made no allegations to the contrary. In addition, the Court finds that Rule 23(b)(1)(B) is applicable to this group of judges as adjudications on the issues raised by plaintiffs with respect to individual judges of the class would, as a practical matter, be dispositive of the interests of other judges not parties to the adjudications. *See, e.g., Canadian St. Regis Band of Mohawk Indians v. State of New York*, 97 F.R.D. 453 (N.D.N.Y.1983) (defendant class certification under Rule 23(b)(1)(B)).[8]

Based on the foregoing, the defendant class shall be certified. In this regard, the Court perceives no problem with respect to notice to the individual Superior Court Judges as the plaintiff has named as defendants in their official capacities both the Honorable John Speziale as the Chief Justice of the Connecticut Supreme Court and the Honorable Maurice Sponzo as the Chief Court Administrator of the State of Connecticut.

## IV. PRELIMINARY INJUNCTION

The motion which remains to be decided by this Court is plaintiffs' motion for a preliminary injunction. The plaintiffs seek a preliminary injunction requiring that the members of the defendant class advise all members of the plaintiff class of their right to counsel in civil contempt proceedings in child support matters and their right to appointed counsel if found to be indigent in these matters, and appoint counsel for such class members when found to be indigent. For the plaintiffs to prevail on this motion for a preliminary injunction, they must show "possible irreparable injury and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party seeking relief." *Caulfield v. Board of Educ.*, 583 F.2d 605, 610 (2d Cir.1978).

---

**7.** *See also Emery v. Cimmino,* Civil No. N–82–123, slip op. at 24–26 (D.Conn. March 23, 1983) (discussing certification under Rule 23(a) of defendant class consisting of all clerks of the Connecticut Superior Court).

**8.** The Court notes that the plaintiff seeks to certify the defendant class only under Rule 23(b)(1)(B), Fed.R.Civ.P. Having found that this portion of Rule 23 is applicable to the case at bar, this Court need not address the issue of the plaintiff seeking certification of the defendant class pursuant to Rule 23(b)(2). *Compare Thompson v. Board of Educ.,* 709 F.2d 1200, 1203–04 (6th Cir.1983) (indicating that defend-

ant class may not be certified under Rule 23(b)(2)) *and Coleman v. McLaren,* 98 F.R.D. 638, 651–52 (N.D.Ill.1983) (same) *with Baker v. Wade,* 553 F.Supp. 1121, 1125 & n. 1 (N.D.Tex. 1982) (permitting defendant class certification under Rule 23(b)(2)) *and Leist v. Shawano County,* 91 F.R.D. 64, 68 (E.D.Wis.1981) (same). *See also Marcera v. Chinlund,* 595 F.2d 1231, 1238 & n. 10 (2d Cir.) (describing Rule 23(b)(2) as an appropriate vehicle for injunctive relief against a defendant class of local public officials), *vacated on other grds.,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979).

The Court has little difficulty in agreeing with the plaintiffs' position that absent the proposed injunction, members of the plaintiff class stand to suffer irreparable injury. As a District Judge recently stated in a substantially similar context, "there is no adequate remedy at law for a deprivation of one's physical liberty." *Cobb v. Green*, 574 F.Supp. 256 at 261 (W.D.Mich.1983) (granting preliminary injunction against a state court judge and others). The plaintiffs allege that the irreparable injury of incarceration flows from the defendants' failure to act in conformance with the requirements of the Constitution. Because his deprivation of liberty may occur immediately upon, or shortly after, the alleged unconstitutional action of a Superior Court Judge, it follows that the actions complained of threaten members of the plaintiff class with "possible irreparable injury." *Caulfield v. Board of Educ.*, 583 F.2d at 610. Moreover, the Court recognizes that each member of the defendant class enjoys complete judicial immunity as to any claim that any member of the plaintiff class could bring for damages arising from such incarceration. *See Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Stump v. Sparkman*, 435 U.S. 349, 355–56, 360, 98 S.Ct. 1099, 1104, 1106, 55 L.Ed.2d 331 (1978). The Court concludes that plaintiffs have satisfied the first requirement necessary for the issuance of the proposed preliminary injunction, that is "possible irreparable injury." *Caulfield v. Board of Educ.*, 583 F.2d at 610.

As previously stated, plaintiffs complain that, as indigent litigants in civil contempt proceedings for failure to make payments under these child support orders, they face possible incarceration and therefore are entitled to be notified both of a right to counsel and of a right to appointed counsel if unable to afford counsel, and are entitled to court-appointed counsel if found to be indigent. As bases for this assertion, plaintiffs direct the Court to the Sixth and Fourteenth Amendments right to counsel, *see* Complaint at Paragraph 25, and to the Fourteenth Amendment Due Process Clause right to counsel, *see* Complaint at Paragraph 26. To determine whether the preliminary injunctive relief sought is appropriate, the Court now must evaluate the plaintiffs' likelihood of success on the merits of these claims.

■ Certainly the Sixth Amendment requires that an indigent *criminal* defendant in federal court be provided with appointed counsel unless that defendant has waived that right. Further, the Court in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), extended this right to appointed counsel to indigent *criminal* defendants facing felony charges in state court.[9] The *Gideon* Court found that the right to counsel of an indigent criminal defendant facing a state felony charge was a fundamental right essential to a fair trial and, accordingly, held this Sixth Amendment right to counsel applicable to the states through the Due Process Clause of the Fourteenth Amendment. 372 U.S. at 342–45, 83 S.Ct. at 795–797. Expanding on this Sixth and Fourteenth Amendments right to counsel, the Supreme Court in *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), held that the right of an indigent *criminal* defendant to appointed counsel included trial on a petty or misdemeanor offense, at least where that trial resulted in incarceration.[10] *Id.* at

**9.** The Supreme Court had earlier held, in *Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932), that the Due Process Clause of the Fourteenth Amendment guaranteed the indigent defendants in that instance, in a capital case in state court, the right to appointed counsel. Although the decision in *Powell v. Alabama* was limited to its particular facts, the Court in *Gideon v. Wainwright* noted the *Powell* Court's "unmistakable" conclusions about "the funda-

mental nature of the right to counsel." *Gideon v. Wainwright*, 372 U.S. at 343, 83 S.Ct. at 796.

**10.** In *Argersinger*, the indigent defendant was charged with a "petty" offense, one punishable by imprisonment up to six months and/or a $1,000 fine, in state court and was denied the assistance of counsel. The defendant was sentenced to 90 days imprisonment. The Florida Supreme Court ruled that the defendant was properly denied the assistance of counsel be-

36–37, 92 S.Ct. at 2012. The *Argersinger* Court expressly did not decide whether such a right exists when the indigent criminal defendant is not actually incarcerated as a result of a conviction. *See Id.* at 37, 92 S.Ct. at 2012 ("We need not consider the requirements of the Sixth Amendment as regards to right to counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail"). Finally, in this context, the Supreme Court in *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), adopted an "actual incarceration test" to determine when an indigent *criminal* defendant's Sixth and Fourteenth Amendments right to counsel has been violated.[11] The *Scott* Court specifically refused to hold that the Sixth and Fourteenth Amendments require that an indigent criminal defendant receive appointed counsel whenever incarceration is a possible consequence of conviction. 440 U.S. at 372–73, 99 S.Ct. at 1161. The Court's limited holding in *Scott* was that "the Sixth and Fourteenth Amendments to the United States Constitution require only that no *indigent criminal defendant* be sentenced to a term of imprisonment unless the state has afforded him the right to assistance of appointed counsel in his defense." *Id.* at 373–74, 99 S.Ct. at 1161–62 (emphasis supplied).

In contexts other than "criminal," the Supreme Court has in recent years examined the right of an indigent litigant to appointed counsel. *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967),

marked the occasion for the Supreme Court to announce that, although juvenile hearings are considered "civil" proceedings, the "Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result* in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." 387 U.S. at 41, 87 S.Ct. at 1451 (emphasis supplied). The Supreme Court in this context seems to rest the indigent person's right to counsel and appointed counsel squarely on the Due Process Clause of the Fourteenth Amendment rather than on this clause incorporating, and thereby making applicable to the states, the relevant requirements of the Sixth Amendment. Further, this Court notes that the language of *In Re Gault* reveals a "potential incarceration" test for determining the existence of the right to assistance of counsel under the Due Process Clause. However, this holding of *In Re Gault* comes well before the decision in *Scott v. Illinois, supra,* in which the Supreme Court, in a *criminal* context, specifically rejected the "potential incarceration" test for determining the existence of the right to assistance of counsel based upon the Sixth and Fourteenth Amendments.

■ In the more recent case of *Lassiter v. Department of Social Services*, 452 U.S.

---

cause the right to counsel in a criminal case, analogous to the right to trial by jury, extended only to non-petty offenses punishable by more than six months imprisonment. *Argersinger v. Hamlin*, 407 U.S. at 27, 92 S.Ct. at 2007. The *Argersinger* Court rejected this position stating that the rationales of *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) and *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) have "relevance to any criminal trial, where an accused is deprived of liberty." *Id.* at 32, 92 S.Ct. at 2010. The *Argersinger* Court therefore held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct. at 2012.

11. The Court in *Scott v. Illinois* apparently did not view its decision as adopting a new rule or as curtailing prior precedent. *See Scott,* 440 U.S. at 369–73, 99 S.Ct. at 1160–61. Instead, the *Scott* Court felt it was merely restating, although perhaps more explicitly, the rule which the Court had adopted in *Argersinger. Id.* at 373, 99 S.Ct. at 1161. The offense for which the defendant in *Scott* was convicted was more than a "petty" offense, as it was punishable by up to one year imprisonment. *See Id.* at 380, 99 S.Ct. at 1165 (Brennan, J., dissenting). Nevertheless, the Court held that potential incarceration of this length did not afford the defendant the right to counsel. *Id.* at 373–74, 99 S.Ct. at 1161–62. This right would have been violated only if actual incarceration of any duration resulted from the conviction. *Id.*

18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Supreme Court again addressed the right to counsel in other than "criminal" proceedings. In *Lassiter*, a woman prisoner was brought to state court on a petition by the Durham County Department of Social Services to have the woman's parental rights concerning her son terminated. At the termination hearing in state court, the judge and the mother discussed the absence of an attorney to represent her, with the judge thereafter ruling that "she has had ample opportunity to seek and obtain counsel prior to the hearing of this matter, and [that] her failure to do so is without just cause." *Lassiter*, 452 U.S. at 22, 101 S.Ct. at 2157. When appearing at the state termination proceeding, Ms. Lassiter "did not aver that she was indigent, and the court did not appoint counsel for her." *Id.* Examining the various interests at stake under the due process guidelines of *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976),[12] the Court in *Lassiter* held that the decision of whether the Due Process Clause of the Fourteenth Amendment requires the appointment of counsel for indigent parents in termination proceedings must be made on a case-by-case basis by the trial judge. 452 U.S. at 31–32, 101 S.Ct. at 2161–62. The Court went on to hold that on the facts before it, the trial judge did not violate Ms. Lassiter's right to due process of law in failing to appoint counsel to represent her. *Id.* at 33, 101 S.Ct. at 2162.

The importance of the *Lassiter* decision to the case at bar emanates from the Court's discussion of the right of an indigent litigant to appointed counsel in "civil" proceedings. The Court in *Lassiter* dealt with an asserted denial of the right to appointed counsel based solely on the Due Process Clause of the Fourteenth Amendment. 452 U.S. at 24, 101 S.Ct. at 2158. While analyzing the claim, the *Lassiter* Court noted its prior decision in *In Re Gault, supra*, as demonstrating that it is the indigent individual's interest in personal freedom "which triggers the right to appointed counsel," and "not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases." *Id.* at 25, 101 S.Ct. at 2158. After the *Lassiter* decision, it is fairly clear that the plaintiffs in the case at bar can base their claim for the right to appointed counsel solely on the Due Process Clause of the Fourteenth Amendment rather than on the Sixth and Fourteenth Amendments right which pertains to criminal matters. This is not to say, however, that the principles underlying the cases dealing with the Sixth and Fourteenth Amendments right to counsel in criminal cases are not highly probative on the existence and scope of the right to counsel in civil cases under the Fourteenth Amendment. *See Lassiter*, 452 U.S. at 24–27, 101 S.Ct. at 2158–59. Nonetheless, the Court concludes that plaintiffs have not demonstrated the probability of success on the merits insofar as plaintiffs' claim is based specifically on the Sixth and Fourteenth Amendments right to counsel.

With regard to the Due Process Clause of the Fourteenth Amendment, the plaintiffs rely on the language of *Lassiter* to establish that, because there is a potential for incarceration resulting from these civil contempt proceedings, each class member has a right to appointed counsel in these proceedings. In its discussion of the Due Process Clause requiring the appointment of counsel, the *Lassiter* Court considered its prior cases dealing with this area in the

---

**12.** The factors to be considered in a due process analysis, as announced in *Mathews v. Eldridge*, are:
  1) the private interest that will be affected by the official action,
  2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and

3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.
424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

context of criminal prosecutions. Additionally, the Court noted and emphasized its prior language, (already noted in this opinion), from *In Re Gault, supra,* from which a "potential incarceration" test for this right can be inferred. *Id.* at 25, 101 S.Ct. at 2158. Concluding its review of precedent, the *Lassiter* Court discussed the case of *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). In addressing the latter decision, the *Lassiter* Court stated that the Court in *Scott v. Illinois, supra,* had "refused to extend the right to appointed counsel to include prosecutions which, though criminal, *do not* result in the defendant's loss of personal liberty." *Id.* at 26, 101 S.Ct. at 2159 (emphasis supplied). The Court in *Lassiter* further noted that it had held in *Scott v. Illinois* that actual imprisonment was the line which defined the constitutional right to appointment of counsel in the criminal context. *Id.* In synthesizing its prior decisions the *Lassiter* Court stated that:

> [T]he Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and thus we draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.

452 U.S. at 26–27, 101 S.Ct. at 2159. It is the latter phrase, "when, if he loses, he *may be* deprived of his physical liberty," (emphasis supplied), to which the plaintiffs point as establishing the right to counsel on a "potential incarceration" basis.

Certainly the cited language of *Lassiter* is prospective and concerns the potential for incarceration, rather than being retrospective by dealing only with whether actual incarceration resulted from the proceedings. It is unclear to this Court, however, whether the Supreme Court by its language in *Lassiter* intended to adopt a prospective "potential incarceration" test to determine the indigent civil litgant's right to appointed counsel under the Due Process Clause of the Fourteenth Amendment. This uncertainty lingers particularly because this statement of a "prospective" rule immediately follows the *Lassiter* Court's discussion, in laudatory terms, of the retrospective *Scott v. Illinois* actual incarceration rule as delimiting a state's requirements in a criminal context under the Constitution. The Court in *Lassiter* gave no indication that it sought to overturn the rule of *Scott v. Illinois* in one sentence when it had just concluded praising its boundaries in the previous paragraph. In addition, it is not clear that the *Lassiter* Court was establishing a rule for indigent litigants in civil proceedings different from that which obtains in criminal proceedings. It would appear anomalous for an indigent civil litigant to have a more extensive right to appointed counsel based on the "potential incarceration" test which *Lassiter* suggests is appropriate under the Due Process Clause of the Fourteenth Amendment, than would an indigent criminal defendant under the Sixth and Fourteenth Amendments, which right to counsel and appointed counsel is violated only in the event of actual incarceration under the rule of *Scott v. Illinois.*[13]

Nevertheless, the language employed by the Supreme Court in *Lassiter* is prospective, and, on the strength of that language, several courts subsequent to the *Lassiter* decision have held that an indigent individ-

---

**13.** The Court notes that even the actual incarceration test of *Scott v. Illinois* is not without its prospective effect. In clarifying the rule of *Argersinger,* the *Scott* Court implicitly approved the language of *Argersinger* where that Court stated:

> "Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel.

> He will have a measure of the seriousness and gravity of the offense and know when to name a lawyer to represent the accused before the trial starts." *Argersinger v. Hamlin,* 407 U.S. at 40, 92 S.Ct. at 2014.

This Court notes that this prospective effect of *Argersinger* and *Scott* has been pointed out by the Ninth Circuit Court of Appeals in a situation involving civil contempt for nonpayment of child support. *See Henkel v. Bradshaw,* 483 F.2d 1386, 1390 (9th Cir.1973).

ual in a civil contempt proceeding has a right to appointed counsel based on the potential incarceration in which the proceeding may result. Of particular relevance to the case at bar, the Court of Appeals for the Fifth Circuit, in the context of civil contempt in a child support case, recently declared that, if "imprisonment ... is the *possible result* of a proceeding, the defendant who is *threatened* with jail has the right to a lawyer." *Ridgway v. Baker*, 720 F.2d 1409, 1415 (5th Cir.1983) (emphasis supplied). Similarly, in *Young v. Whitworth*, 522 F.Supp. 759 (S.D.Ohio 1981), the Court, in announcing what it reasoned the *Lassiter* decision required in the same factual circumstances, ruled that "when an indigent father is *faced with imprisonment* on contempt charges for nonsupport counsel must be provided to him" (emphasis supplied). 522 F.Supp. at 766. In a subsequent case involving a plaintiff class of indigent persons facing civil contempt for failure to pay child support, the Court in *Mastin v. Fellerhoff*, 526 F.Supp. 969 (S.D.Ohio 1981), stated the following:

> That plaintiffs in this case stand to be deprived of their physical liberty is without dispute. The only question is whether the Fourteenth Amendment requires appointment of counsel in civil, as well as criminal proceedings, where the litigants are indigent and *may be* deprived of their physical liberty. The answer to this question must necessarily be yes.

526 F.Supp. at 973 (emphasis supplied). It was on this basis that the *Mastin* Court granted the plaintiff class' motion for summary judgment seeking permanent injunctive relief against the Domestic Relations Court.

Dealing with a witness who had failed to produce certain documents under court order, the Second Circuit Court of Appeals recently joined these courts when, in *United States v. Bobart Travel Agency, Inc.*, 699 F.2d 618, (2d Cir.1983), it held that a witness who *may be* incarcerated in a civil contempt proceeding has a right to counsel and, if indigent, is entitled to appointed counsel (emphasis supplied). *Id.* at 620. The Court in *Bobart Travel Agency* adopted this potential incarceration test citing to the decision of the Supreme Court in *Lassiter*. The law in this Circuit, then, based on the *Bobart Travel Agency* decision, is that a civil litigant facing potential incarceration in a civil contempt proceeding is entitled to the assistance of counsel and to appointed counsel if indigent, at least when this occurs in situations similar to that which confronted the Court in *Bobart Travel Agency*. It is against this background that the Court must now assess the plaintiffs' probability of success on the merits of this claim under the Due Process Clause of the Fourteenth Amendment.

Courts have read the *Lassiter* decision as giving to civil litigants *who face potential incarceration* the absolute right to the assistance of counsel and the appointment of counsel if indigent, based on due process of law. The Court in *Mastin v. Fellerhoff, supra*, asserted that *Lassiter* gives such litigants an absolute due process right and that the due process balancing of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976),[14] comes into play only when the right to counsel is not absolute. That is, the *Mastin* Court felt that only in situations when a civil litigant was *not faced* with the potential loss of personal liberty need a court conduct a *Mathews v. Eldridge* due process analysis to determine whether there is a right to counsel under a particular set of facts. *Id.* The Court in *Norden v. Mitchell*, 716 F.2d 1335 (10th Cir.1983), was of a similar view, as it conducted a *Mathews v. Eldridge* due process analysis only after specifically determining that the plaintiff did not "as a direct consequence of ... [a paternity] decision face an immediate loss of physical liberty." *Id.* at 1336. The absence of an explicit balancing of the due process factors enumerated in *Mathews v. Eldridge, supra*, by the Second Circuit in *Bobart Travel Agency* leads to a fairly strong inference that it concurred in

**14.** *See* note 12, *supra.*

this "absolute" interpretation of the *Lassiter* decision. *See* 699 F.2d at 620.

If this is a proper reading of *Lassiter*, then plaintiffs clearly have established a high probability of success on the merits in this case. The Court could make this determination without conducting an in-depth due process analysis because plaintiffs would seem automatically to be entitled to counsel and appointed counsel if indigent in such proceedings. This follows simply from demonstrating that in such proceedings the alleged contemnor faces potential incarceration. In this regard, the Court is not persuaded by the defendants' argument that alleged contemnors who are indigent do not face potential incarceration in these proceedings because, as indigent persons, they could not lawfully be incarcerated on contempt for failure to make payments under such a support order. First, the standard of indigency which would invoke a right to appointed counsel is not necessarily identical to that giving rise to an inability to make support payments under such an order. *See Cobb v. Green*, 574 F.Supp. 256 at 260 (W.D.Mich.1983). A person might very well be financially entitled to appointed counsel but still retain the means to make the payments under the order, thereby remaining subject to potential incarceration in these civil contempt proceedings. Second, the court hearing the contempt matter is more likely to make an erroneous determination that an alleged contemnor has the means to comply with the support order if the alleged contemnor is without counsel. *Ridgway v. Baker*, 720 F.2d 1409, 1414 (5th Cir.1983); *Young v. Whitworth, supra,* at 763. Hence, the Court concludes that members of the plaintiff class will be confronted with potential incarceration in these civil contempt proceedings. Thus, if this "absolute" interpretation of *Lassiter* is correct, the plaintiffs have demonstrated a high probability of success on the merits.

If this "absolute" interpretation of *Lassiter* is improper, then the Court must evaluate whether the plaintiffs have made a showing of probable success on the merits of the due process claim based on the *Mathews v. Eldridge* factors as applied to the particular proceedings. The possible results of such an inquiry are that it is likely (1) that there is a due process requirement of a right to counsel and appointed counsel in these proceedings, (2) that there is no due process requirement of a right to counsel and appointed counsel in these proceedings, or (3) that there must be a case-by-case determination by the trial judge on whether due process requires the right to counsel and appointed counsel in these proceedings. *See Lassiter*, 452 U.S. at 31–32, 101 S.Ct. at 2161–62; *Young v. Whitworth, supra.*

The Court notes, however, again assuming that the "absolute" reading of *Lassiter* is not proper, that the decision of the Second Circuit Court of Appeals in *Bobart Travel Agency* can be read to have implicitly conducted this due process analysis as applied to the type of civil contempt situation which it there confronted. At least for that type of civil contempt situation, the *Bobart Travel Agency* Court necessarily determined that due process required that the alleged contemnor be afforded the right to counsel and the right to appointed counsel if indigent. *See Bobart Travel Agency*, 699 F.2d at 620. Thus, if this Court finds no material difference between the type of civil contempt proceeding involved in the case at bar and the type of civil contempt proceeding in *Bobart Travel Agency*, the Court can conclude that, in this case, plaintiffs have demonstrated a high probability of success on the merits of their claim of a right to counsel and appointed counsel if indigent.

In this regard, the Court has difficulty perceiving a distinction of moment between a litigant facing potential incarceration in a civil contempt proceeding for nonpayment of child support and the litigant in *Bobart Travel Agency* facing potential incarceration for failure to produce certain documents under court order. It appears unlikely to this Court that there would be any difference between these two situations which would justify or compel unequal treatment with regard to the right to coun-

sel and the right to appointed counsel if indigent. *See Young v. Whitworth, supra,* (finding no distinction between the right to counsel in civil contempt proceedings for failure to testify before a grand jury or to comply with an Internal Revenue summons and the right to counsel in a civil contempt proceeding for nonpayment of child support). Rather, it is the potential deprivation of personal liberty common to both situations which, under the Due Process Clause, is of the highest significance to the right to counsel and appointed counsel. *Lassiter, supra,* 452 U.S. at 26–27, 101 S.Ct. at 2159. This being the case, the plaintiffs' claim in these civil contempt proceedings would appear to be controlled by the decision and implicit analysis of the Court of Appeals in *Bobart Travel Agency.* Therefore, the Court finds that the plaintiffs have clearly established a high probability of success on their claim of a right to counsel under the Due Process Clause of the Fourteenth Amendment.

As additional support for this finding, the Court points out that in decisions which have involved an explicit *Mathews v. Eldridge* due process analysis in civil contempt proceedings for nonpayment of child support, courts have concluded that the alleged contemnors in such proceedings are entitled to the right to counsel and the right to appointed counsel if indigent. In *Young v. Whitworth, supra,* the Court conducted a due process analysis considering the factors set forth in *Mathews v. Eldridge* and determined that the alleged contemnor in a civil contempt proceeding for nonpayment of child support, in which there is potential incarceration as a result, must be provided with the right to counsel and the right to appointed counsel if indigent. *See* 522 F.Supp. at 762–66. Moreover, although the Court in *Mastin v. Fellerhoff, supra,* felt that such a due process balancing analysis was not necessary under its "absolute" reading of *Lassiter,* it expressly approved of the analysis by the Court in *Younger v. Whitworth. See Mastin v. Fellerhoff,* 526 F.Supp. at 973. These decisions, in this Court's view, lend significant support to the plaintiffs' demon-

stration in this case of a high probability of success on the merits of their due process claim.

As a postscript to this discussion, the Court notes that accompanying the plaintiffs' right to counsel and appointed counsel in these proceedings is the right to have the state court judges inform the members of the plaintiff class of these rights. *See In Re Gault,* 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527 (1967). Thus, the entire preceding evaluation of the plaintiffs' probability of success on the merits in this case, insofar as this assessment addressed only the right to counsel and appointed counsel if indigent, applies equally to the right to be informed of the right to counsel and appointed counsel in these civil contempt proceedings.

In light of the above, it is clear to this Court that the plaintiffs also satisfy the alternative prong of the test for issuance of the requested preliminary injunctive relief, that of "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party seeking relief." *Caulfield v. Board of Educ.,* 583 F.2d at 610. The "sufficiently serious questions" inquiry is subsumed by this Court's finding that plaintiffs have demonstrated a probability of success on the merits. In addition, by approving of the Courts' evaluations in *Young, supra,* and in *Mastin, supra,* of the *Mathews v. Eldridge* interests in the context of what due process requires in these civil contempt proceedings, the Court has implicitly found that the balance of hardships tips decidedly in favor of the plaintiffs. The *Mathews v. Eldridge* factors take into account the various hardships, including potential incarceration for the plaintiffs and the fiscal and administrative burdens which are likely to result from the proposed injunction. The Court agrees with the *Young* and *Mastin* decisions which implicitly found, and with the Court in *Cobb v. Green, supra,* 574 F.Supp. at 260, which decided, that the balance of hardships tips decidedly in favor of the plaintiffs in these circumstances.

**1342**

See also *Ridgway v. Baker*, 720 F.2d at 1415.

Based on the foregoing, the plaintiffs' motion for a preliminary injunction is GRANTED. *Caulfield v. Board of Educ.*, 583 F.2d at 610. Accordingly, the defendants, Chief Justice John Speziale and Chief Court Administrator Maurice Sponzo, and the members of the defendant class, the Superior Court Judges of the State of Connecticut, are hereby required to advise all members of the plaintiff class of their right to counsel and their right to court-appointed counsel if found to be indigent, and to appoint counsel to assist such class members found to be indigent, in civil contempt proceedings concerning child support orders existing for the benefit of the State of Connecticut, in which members of the plaintiff class face potential incarceration.[15] This preliminary injunction shall remain in effect until this Court determines the merits of the claim in this action or until further order of this Court.

It is SO ORDERED.

**15.** The Court notes that this preliminary injunction, by its terms, has force only in instances where the alleged contemnor faces potential incarceration as a result of the contempt proceeding. Thus, if a state court judge eliminates incarceration as a possible result of the proceeding, the preliminary injunction has no application to that proceeding. *See Ridgway v. Baker*, 720 F.2d 1409, 1415 (5th Cir.1983).